# NO. 12-06-00418-CR
# NO. 12-06-00419-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TRAVIS CLEO STONE, III,*<br>*APPELLANT* | § | *APPEALS FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Travis Cleo Stone, III appeals his convictions for possession of anhydrous ammonia with intent to manufacture methamphetamine, for which he was sentenced to imprisonment for thirty-two years. Appellant further appeals his conviction for arson resulting in bodily injury, for which he was sentenced to imprisonment for twenty years. In seven issues, Appellant challenges the sufficiency of the evidence as well as the trial court's admission of certain evidence. We affirm.

### BACKGROUND

Appellant was charged by multiple indictments with possession of anhydrous ammonia with intent to manufacture methamphetamine[1] and arson resulting in bodily injury.[2] Each indictment contained an enhancement paragraph alleging that Appellant had previously been convicted of a felony. Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.124(a), (b) (Vernon Supp. 2008).

[2] *See* TEX. PENAL CODE ANN. § 28.02(a-1), (e) (Vernon Supp. 2008).

Jim Chiles testified that on the night of January 23, 2006, he looked out of his Henderson County residence on Cedar Creek Lake and saw a nearby storage building that was ablaze. Chiles stated that his wife contacted law enforcement while he went to his back porch with his binoculars to observe the fire.

Fire Chief Randy Harley and the Payne Springs Volunteer Fire Department soon arrived at the scene. Harley testified that when his department arrived at the storage building, the fire was intense with heavy dark smoke. Harley further testified that part of the building had been blown out at its base with pieces of it found fifteen to eighteen feet from the structure. Harley stated that this indicated the fire had begun with an explosion. Harley further stated that there were several smaller explosions that occurred while his department was battling the fire. Harley explained that it took more water and time to extinguish the fire than he anticipated based on the size of the structure. Harley testified that once the department was able to extinguish the blaze, firemen attempted to enter the remains of the storage building to search for hot spots.

Once inside the structure, volunteer firemen Tim Bivins and Shannon Ward discovered two propane tanks. Ward testified that they encountered a strong odor resembling that of ammonia and bleach. Bivins testified that one of the tanks with an unusual looking valve stem began spewing a gaseous substance. Bivins stated that he was soon overcome by the substance and had trouble breathing. Bivins had to be taken to East Texas Medical Center in Gun Barrel City, Texas where he was administered oxygen and treated for his inability to breathe.

Harley testified that he recognized that the shed was a clandestine methamphetamine lab and contacted the Henderson County Sheriff's Department to further investigate it once the fire was extinguished. Harley further testified that when he and other fire department personnel arrived at the scene, they noticed Appellant running aimlessly about and had to restrain him from interfering with their firefighting efforts. Harley stated that once he had the situation under control, he spoke with Appellant and noticed that he had burns along his lower legs. According to Harley, Appellant told him that he had been inside the storage structure when it had caught fire and that he needed to enter the structure to retrieve the keys to his truck. Harley testified that Appellant indicated to him that he planned to leave the scene once he had his truck keys. Harley further testified that during this conversation, Appellant told him that he was renting a room in the adjoining mobile home.

Botie Hillhouse, a narcotics investigator with the Henderson County Sheriff's Department,

arrived on the scene in response to Harley's report of a possible clandestine methamphetamine lab. Hillhouse testified that he found the two propane style tanks in the storage shed. After conducting a "Drager test"[3] on the two tanks, Hillhouse determined that the tank with the unusual looking valve stem contained anhydrous ammonia. Hillhouse testified that anhydrous ammonia is used in the manufacture of methamphetamine. Hillhouse observed two Coleman fuel containers that had also been found in the storage shed, as well as two starter fluid cans that had holes punched in them. Hillhouse testified that the methamphetamine manufacturing process used ether, which was obtained from starter fluid cans by holding them upside down and depressurizing them.

Hillhouse stated that he received permission from the owner of the mobile home next to the burnt storage shed to search it. Hillhouse further stated that Appellant joined him when he went inside. Hillhouse testified that in one of the bedrooms of the mobile home, he discovered a glass container with a cloudy powdery type substance mixed in a liquid as well as bottles of Heet[4] on the floor in plain view. Hillhouse further testified that he found boxes of empty pseudoephedrine pills and receipts for the pseudoephedrine pills in a trash container. Hillhouse stated that he also found a black zipper type bag containing drug paraphernalia comprising a spoon, clear plastic baggies, and a baggy with a white powdery residue and a hypodermic needle in it. Hillhouse further stated that he found acetone in the bathroom adjoining the bedroom. Hillhouse testified that all of the items he collected were consistent with items found in the thirty-five to forty methamphetamine labs he had previously investigated. Hillhouse also testified that he found $1,500.00 in cash on the bed in the room with the aforementioned items. Hillhouse stated that he believed the money was Appellant's proceeds from methamphetamine sales. Hillhouse further stated that while he was in the bedroom sorting through the various items, Appellant entered the room and sat on the bed. Hillhouse testified that, at one point, Appellant hung his head, looked at the floor, and said to no one in particular, "Damn, I'm going back to the pen."

Marcus McLean, a forensic scientist with the Department of Public Safety Crime Lab in

---

[3] Hillhouse testified that a "Drager test" is a method of using a pump device to detect the presence of certain gases.

[4] Hillhouse explained that Heet is a gasoline additive that is used as a solvent in which to soak the pseudoephedrine pills. Hillhouse described this soaking of the pseudoephedrine as the initial step of the methamphetamine manufacturing process.

3

Tyler, Texas, testified about the process of making methamphetamine. McLean explained that the pseudoephedrine is soaked in a solvent such as methanol or acetone. The resulting evaporation yields a pure form of pseudoephedrine. Anhydrous ammonia and lithium strips from batteries are then combined with this pure pseudoephedrine. Next, either the ether obtained from the starter fluid cans or the Coleman fuel is used to cook and create the chemical reaction that yields methamphetamine. McLean testified that the mixing of these items can cause an explosion, which could ignite a fire. McLean further testified that he tested the soaked pseudoephedrine pills found during the investigation and determined that a controlled substance had not yet been created.

Tonya Posey, an employee for Mabank Family Pharmacy, testified that Appellant purchased two boxes of pseudoephedrine pills on January 23, 2006. During her testimony, Posey relied upon records the State requires that pharmacies keep regarding the sale of pseudoephedrine pills.[5] Toni Prestridge, the store manager for CVS in Mabank, Texas, testified that Appellant had purchased pseudoephedrine pills from their pharmacy on September 28, October 22, November 3, and December 31, 2005.

Ultimately, the jury found Appellant "guilty" as charged on both counts. Following a bench trial on punishment, the trial court sentenced Appellant to imprisonment for thirty-two years for possession of anhydrous ammonia with intent to manufacture methamphetamine and twenty years for arson with bodily injury. Appellant timely filed this appeal.

## EVIDENTIARY SUFFICIENCY

In his issues one through four, Appellant argues that the evidence is neither legally nor factually sufficient to support the trial court's judgment.

## Standard of Review

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense

---

[5] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.077(a) (Vernon Supp. 2008).

beyond a reasonable doubt.  *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).  The evidence is examined in the light most favorable to the verdict.  *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186.  A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court.  *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge.  *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried."  ***Id.***

## Factual Sufficiency

When considering the factual sufficiency of the evidence, we must first assume that the evidence is legally sufficient under the ***Jackson*** standard.  *See **Clewis v. State***, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).  We then consider all of the evidence weighed by the trial court that tends to prove the existence of the elemental fact[6] in dispute and compare it to the evidence that tends to disprove that fact.  *See **Santellan v. State***, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  Although we are authorized to disagree with the trial court's determination, even if probative evidence exists that supports the verdict, *see **Clewis***, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the trial court's role as the sole judge of the weight and credibility of witness testimony. ***Santellan***, 939 S.W.2d at 164.  Where there is conflicting evidence, the trial court's verdict on such matters is generally regarded as conclusive.  *See **Van Zandt v. State***, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref'd).  Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the trial court's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  ***Johnson v. State***, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also **Watson v. State***, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (evidence is factually insufficient only when reviewing court objectively concludes that the great

---

[6] As with a review for legal sufficiency, we measure the factual sufficiency of the evidence of the offense as defined by a hypothetically correct jury charge. *See **Wooley v. State***,  No. PD-0861-07, 2008 WL 2512843, at *1 (Tex. Crim. App. June 25, 2008).

weight and preponderance of the evidence contradicts the verdict).

**Possession of Anhydrous Ammonia**

In his first and third issues, Appellant argues that the evidence is insufficient to support the charges that he possessed anhydrous ammonia with the intent to unlawfully manufacture methamphetamine. "Contraband" is an item that it is unlawful for a person to possess. *See* BLACK'S LAW DICTIONARY 317 (7th ed. 1999). Anhydrous ammonia is contraband when it is possessed with the intent to manufacture methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.124(b). In the case at hand, to support Appellant's conviction for possession of anhydrous ammonia with the intent to manufacture methamphetamine, the State was required to prove that Appellant (1) exercised control, management, or care over the substance and (2) knew the matter possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or in circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. TEX. PENAL CODE ANN. § 6.03(b) (Vernon 2003). The State must establish to the requisite level of confidence that the accused's connection with the contraband was more than just fortuitous. *Poindexter*, 153 S.W.3d at 406. When the accused is not in possession of the place where the contraband is found, we cannot conclude that he had knowledge of and control of the contraband unless there are additional independent facts and circumstances which link the accused to the contraband. *Id.*[7] Links that Texas courts have recognized as sufficient, either singly or in combination, to establish a person's possession of contraband include the following:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

---

[7] The court of criminal appeals has recognized that the adjective "affirmative" adds nothing to "link" and resolved to use only the word "link" to describe circumstances tending to connect the accused to the contraband. *See Evans v. State*, 202 S.W.3d 158, 161-62 & n. 9 (Tex. Crim. App. 2006).

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). It is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. *Id.* at 162.

Here, Appellant was present when the firemen arrived to extinguish the blaze in the storage shed. Appellant admitted to Harley that he had been in the shed when the fire began. Appellant further stated to Harley that the keys to his truck were in the storage building, which had prevented him from leaving. The anhydrous ammonia was in plain view in an illegal container. Other items needed to manufacture methamphetamine besides anhydrous ammonia were also present. Such items included the starter fluid cans with holes punched in them, the Coleman fuel cans, Heet, acetone, and drug paraphernalia. Appellant made incriminating statements to Harley and Hillhouse before he was arrested including statements that he was present in the storage building when the fire began, that the keys to his truck were in the storage building when the fire began, thus preventing him from leaving the scene of the fire, and that he was going back to the penitentiary. Appellant further conveyed to Harley that he was renting a room in the mobile home next to the storage shed. Moreover, the odor from the anhydrous ammonia was overwhelming, $1,500.00 in cash was found near the drug paraphernalia, and ingredients needed in the manufacture of methamphetamine were present. Finally, the record reflects that Appellant acted erratically during the time the Payne Springs Volunteer Fire Department was extinguishing the fire and during Hillhouse's investigation.

Examining the aforementioned evidence in the light most favorable to the verdict, we conclude that the jury could have determined beyond a reasonable doubt that Appellant exercised control, management, or care over the anhydrous ammonia, that he had the intent to manufacture methamphetamine, and that he knew the anhydrous ammonia was contraband. Therefore, we hold that the evidence is legally sufficient to support the trial court's judgment.

With regard to the factual sufficiency of the evidence, Appellant argues that Chiles testified that he saw four individuals at the scene of the fire. Appellant contends that law enforcement should have investigated to determine who these four individuals were. Yet, whether law enforcement had a duty to investigate other potential suspects is not relevant to our review of the record for factual sufficiency in the instant case. Moreover, the mere presence of these individuals in the place where contraband is discovered, without more, is not conclusive evidence that such persons were parties to the offense. *See Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988). Nor does the presence of others at the scene serve to dilute Appellant's culpability since possession of contraband need not be exclusive. *Id.*

7

Appellant further argues that the links not existing between Appellant, the structure, and the chemicals at issue weigh against the jury's finding of possession on his part.[8] However, we note that it is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. *See Evans*, 202 S.W.3d at 162. Having reviewed the record in its entirety, with consideration given to all the evidence, both for and against the trial court's finding, we have not observed any evidence that causes us to conclude that the proof of guilt is so obviously weak or otherwise so greatly outweighed by contrary proof as to render Appellant's convictions clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the trial court's judgment.

Appellant's first and third issues are overruled.

## Arson with Bodily Injury

In his second and fourth issues, Appellant contends that the evidence was neither legally nor factually sufficient to support his conviction for arson with bodily injury. Appellant further contends that the evidence indicates that Ward, the injured firefighter, was improperly trained to handle hazardous chemicals and might not have inhaled the anhydrous ammonia had he been properly trained.[9]

Arson is an offense against property. *Lozano v. State*, 860 S.W.2d 152, 155 (Tex. App.–Austin 1993, pet. ref'd). The Penal Code defines arson as occurring when a person recklessly starts a fire or causes an explosion while manufacturing or attempting to manufacture a controlled substance and the fire or explosion damages any building, habitation, or vehicle. *See* TEX. PENAL CODE ANN. § 28.02(a-1). An arson offense is complete when the fire is started, not when bodily injury or death occurs as a result. *Lozano*, 860 S.W.2d at 155; *see also Romo v. State*, 593 S.W.2d 690, 693 (Tex. Crim. App. 1980). The occurrence of such damage is not an element to be proven. *Id.* When bodily injury or death occurs as a result of arson, the statutory offense against property

---

[8] Specifically, Appellant argues that there was no evidence that (1) he had a key to the shed or house, (2) he was under the influence of drugs, (3) he had illegal substances on his person at the time of the fire or his subsequent arrest, (4) he made any furtive gestures, (5) he attempted to flee, or (6) he had care, custody, or control of the premises.

[9] Appellant concedes in his brief that contributory negligence is not a defense in a criminal case and acknowledges that the instant case is "not going to change the law." Nonetheless, Appellant invites us to consider the dissenting opinion in *Rowell v. State,* 165 Tex. Crim. 507, 308 S.W.2d 504, 510–17 (Tex. Crim. App. 1957) (Davidson, J., dissenting). Having considered the case law Appellant has cited, we decline to hold that contributory negligence is a defense in this case.

remains unaffected, although the degree of the chargeable felony increases. *Lozano*, 860 S.W.2d at 155 (citing TEX. PENAL CODE ANN. § 28.02(d) (Vernon Supp. 2008)). A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX. PENAL CODE ANN. 6.03(c) (Vernon 2003). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.* Here, as set forth above, the evidence is sufficient to link Appellant to the anhydrous ammonia in the storage shed where the explosion occurred. Moreover, we have held that there is sufficient evidence that Appellant possessed such contraband with the intent to manufacture methamphetamine. The record further reflects that Appellant admitted to Harley that he had been in the shed when the fire began. Harley testified that, based on his training, the fire was the result of manufacturing methamphetamine. Harley further testified that dealing with the compounds found at the scene was a very dangerous activity because the compounds are flammable and could cause death. Harley also testified that part of the building had been blown out at its base and that pieces of it were found fifteen to eighteen feet from the structure. Furthermore, Ward, Harley, and Bivins each described to the jury the strong bleach-like odor that overpowered them upon entering the storage shed. Ward stated that he was overcome by the anhydrous ammonia gas and had trouble breathing, which caused him physical pain.

Considering the aforementioned evidence in the light most favorable to the verdict, we conclude that the jury could have determined beyond a reasonable doubt that Appellant recklessly caused an explosion while manufacturing or attempting to manufacture methamphetamine, that the fire or explosion damaged a building, and that by reason of Appellant's commission of arson, Ward suffered bodily injury. Therefore, we hold that the evidence is legally sufficient to support the trial court's judgment.

With regard to the factual sufficiency of the evidence, Appellant again argues the links not existing between Appellant, the structure, and the chemicals at issue weigh against the jury's finding of possession on his part.[10] *See Evans*, 202 S.W.3d at 162. Based on our review of the record as a

---

[10] *See* n.8.

whole, with consideration given to all the evidence, we have not uncovered any evidence that causes us to conclude that the proof of guilt is so obviously weak or otherwise so greatly outweighed by contrary proof as to render Appellant's convictions clearly wrong or manifestly unjust. Thus, we hold that the evidence is factually sufficient to support the trial court's judgment.

Appellant's second and fourth issues are overruled.

## EVIDENCE OF PSEUDOEPHEDRINE PURCHASES

In his fifth issue, Appellant contends that the trial court erred when it admitted evidence that he had made four purchases of pseudoephedrine in the months leading up to the fire in question. The trial court admitted evidence indicating that Appellant made purchases of pseudoephedrine on September 28, October 22, November 3, and December 31, 2005. Appellant argues that such evidence is inadmissible pursuant to Texas Rule of Evidence 404(b). Appellant further contends that the evidence of these four purchases during the four month period prior to January 23, 2006 should have been excluded because the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403.

When reviewing a trial court's ruling on the admission of evidence, an appellate court applies an abuse of discretion standard of review. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). The trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.*

Texas Rule of Evidence 404(b) prohibits the admission of evidence of other crimes or bad acts committed by the accused to prove the character of the person and that he acted in conformity with that character. TEX. R. EVID. 404(b). The gravamen of Rule 404(b) is that a defendant is to be tried only for the crimes alleged in the indictment and not for being a criminal in general. *Thacker v. State*, 889 S.W.2d 380, 392 (Tex. App.–Houston [14th Dist.] 1994, pet. denied) (citing *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App.1994)). To constitute an extraneous offense, the evidence must show a crime or bad act, and that the defendant was connected to it. *Lockhart v. State*, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992). Less prejudice to the defendant results from the revelation of noncriminal acts than from disclosure of criminal conduct, although we analyze the admission of both according to the same standard of review. *Thacker*, 889 S.W.2d at 392.

Evidence of other crimes or bad acts is admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

10

TEX. R. EVID. 404(b); *Thacker*, 889 S.W.2d at 392. It is within the discretion of the trial court to determine whether admission of the evidence serves some purpose other than character conformity. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). Once a defendant invokes Rule 404(b), if the trial court determines that the evidence is relevant only for character conformity, it has no discretion to admit the evidence over a proper objection. *Thacker*, 889 S.W.2d at 393. On the other hand, if the trial court determines that the evidence is relevant, the defendant must further object that the evidence is unfairly prejudicial. *Id.* The trial court must then use the balancing test set forth in Texas Rule of Evidence 403 to determine whether the danger of unfair prejudice substantially outweighs the probative value of the evidence. *Id.*; *see* TEX. R. EVID. 403. Because Rule 403 favors the admission of relevant evidence, the trial court should favor admission in close cases, and it has wide latitude in ruling on the prejudicial nature of evidence. *Thacker*, 889 S.W.2d at 393 (citing *Montgomery*, 810 S.W.2d at 389–90).

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair" prejudice, that is the tendency of the evidence to suggest a decision on an improper basis. TEX. R. EVID. 403; *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999). Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Montgomery*, 810 S.W.2d at 377. In sum, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (a) any tendency of the evidence to suggest decision on an improper basis, (b) any tendency of the evidence to confuse or distract the jury from the main issues, (c) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (d) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *See Casey*, 215 S.W.3d at 880.

Here, the State argues that the evidence was admissible because it demonstrated Appellant's motive and intent to stockpile pseudoephedrine in order to produce a large batch of methamphetamine. Indeed, an intent to unlawfully manufacture methamphetamine is presumed if the actor possesses, in one container or building, more than three containers packaged for retail sale of a product containing ephedrine or pseudoephedrine in addition to other items specified by statute. *See* TEX. HEALTH & SAFETY CODE ANN. 481.124(b)(3)(A) (Vernon Supp. 2008). Thus, Appellant's retail purchase of multiple packages containing pseudoephedrine was relevant in conjunction with his possession of anhydrous ammonia to prove intent to unlawfully manufacture methamphetamine.

11

We next analyze such evidence pursuant to Rule 403. As set forth above, Appellant's purchases during the four months leading up to the fire at issue are probative evidence of Appellant's intent to unlawfully manufacture methamphetamine. Such intent is a required element to prove the offense charged in this case. *See* Tex. Health & Safety Code Ann. § 481.124(a). The State, thus, needed this probative evidence to demonstrate a required element of the crime alleged. Our review of the record does not indicate that the admission of such evidence, when combined with the other evidence presented during the case, suggested a decision on an improper basis, confused the jury from the main issues, or had any tendency to be given undue weight by the jury otherwise not equipped to evaluate its probative force. Furthermore, the record does not indicate that this evidence was repetitious or that it took an inordinate amount of time to present. As such, we conclude that the probative value of such evidence was not substantially outweighed by the danger of unfair prejudice. Therefore, we hold that the trial court did not abuse its discretion in admitting this evidence. Appellant's fifth issue is overruled.

### "DAMN, I'M GOING BACK TO THE PEN"

In his sixth issue, Appellant complains that the trial court record is incomplete because Appellant's objection to evidence of his statement to Hillhouse, "Damn, I'm going back to the Pen[,]" was not recorded and, therefore, was not part of the record on appeal. The State contends that the record indicates that the trial court responded to Appellant's objection, stating, "I think I'll reserve making a ruling and see how the evidence goes[,] and I'll make my ruling after I hear the rest of the evidence." Thus, the State argues that Appellant has not preserved the issue for appellate review because the record does not show that Appellant secured a ruling on his objection.

Texas Rule of Appellate Procedure 33.1(a) requires, among other things, that the record show the trial court "ruled on the request, objection or motion, either expressly or implicitly...." Tex. R. App. P. 33.1(a)(2)(A); *see Gutierrez v. State*, 36 S.W.3d 509, 511 (Tex. Crim. App. 2001). We agree with the State that the trial court never ruled on Appellant's objection concerning the admissibility of his statement to Hillhouse. As such, error was not preserved. *See* Tex. R. App. P. 33.1(a)(2)(A). Appellant's sixth issue is overruled.

In his seventh issue, Appellant contends that the trial court erred in admitting Appellant's statement to Hillhouse because the probative value of the statement was substantially outweighed by the danger of its unfairly prejudicial effect. However, we need not reach this issue. The record

12

before us indicates that Hillhouse testified concerning Appellant's statement after the trial court had declined to rule on Appellant's objection as discussed above.  Appellant made no objection to Hillhouse's testimony regarding the statement of which he now complains.

An objection must be made each time inadmissible evidence is offered unless the complaining party obtains a running objection or obtains a ruling on the complaint in a hearing outside the presence of the jury. *See Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). Here, the record does not indicate that Appellant made any running objection to Hillhouse's testimony concerning his statement.  Further, the record does not indicate that there was a ruling germane to such testimony in a hearing outside the presence of the jury.  Therefore, Appellant has waived the issue.  Appellant's seventh issue is overruled.

## DISPOSITION

Having overruled Appellant's seven issues, we ***affirm*** the trial court's judgment.

   JAMES T. WORTHEN   
Chief Justice

Opinion delivered September 10, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

13