NO. 12-06-00418-CR


NO. 12-06-00419-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


TRAVIS CLEO STONE, III,
§
 APPEALS FROM THE 173RD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 HENDERSON COUNTY, TEXAS

 

MEMORANDUM OPINION


 Travis Cleo Stone, III appeals his convictions for possession of anhydrous ammonia with
intent to manufacture methamphetamine, for which he was sentenced to imprisonment for thirty-two
years. Appellant further appeals his conviction for arson resulting in bodily injury, for which he was
sentenced to imprisonment for twenty years. In seven issues, Appellant challenges the sufficiency
of the evidence as well as the trial court's admission of certain evidence. We affirm.


Background


 Appellant was charged by multiple indictments with possession of anhydrous ammonia with
intent to manufacture methamphetamine (1) and arson resulting in bodily injury. (2) Each indictment
contained an enhancement paragraph alleging that Appellant had previously been convicted of a
felony. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. 

 Jim Chiles testified that on the night of January 23, 2006, he looked out of his Henderson
County residence on Cedar Creek Lake and saw a nearby storage building that was ablaze. Chiles
stated that his wife contacted law enforcement while he went to his back porch with his binoculars
to observe the fire.

 Fire Chief Randy Harley and the Payne Springs Volunteer Fire Department soon arrived at
the scene. Harley testified that when his department arrived at the storage building, the fire was
intense with heavy dark smoke. Harley further testified that part of the building had been blown out
at its base with pieces of it found fifteen to eighteen feet from the structure. Harley stated that this
indicated the fire had begun with an explosion. Harley further stated that there were several smaller
explosions that occurred while his department was battling the fire. Harley explained that it took
more water and time to extinguish the fire than he anticipated based on the size of the structure. 
Harley testified that once the department was able to extinguish the blaze, firemen attempted to enter
the remains of the storage building to search for hot spots. 

 Once inside the structure, volunteer firemen Tim Bivins and Shannon Ward discovered two
propane tanks. Ward testified that they encountered a strong odor resembling that of ammonia and
bleach. Bivins testified that one of the tanks with an unusual looking valve stem began spewing a
gaseous substance. Bivins stated that he was soon overcome by the substance and had trouble
breathing. Bivins had to be taken to East Texas Medical Center in Gun Barrel City, Texas where
he was administered oxygen and treated for his inability to breathe.

 Harley testified that he recognized that the shed was a clandestine methamphetamine lab and
contacted the Henderson County Sheriff's Department to further investigate it once the fire was
extinguished. Harley further testified that when he and other fire department personnel arrived at
the scene, they noticed Appellant running aimlessly about and had to restrain him from interfering
with their firefighting efforts. Harley stated that once he had the situation under control, he spoke
with Appellant and noticed that he had burns along his lower legs. According to Harley, Appellant
told him that he had been inside the storage structure when it had caught fire and that he needed to
enter the structure to retrieve the keys to his truck. Harley testified that Appellant indicated to him
that he planned to leave the scene once he had his truck keys. Harley further testified that during this
conversation, Appellant told him that he was renting a room in the adjoining mobile home.

 Botie Hillhouse, a narcotics investigator with the Henderson County Sheriff's Department,
arrived on the scene in response to Harley's report of a possible clandestine methamphetamine lab. 
Hillhouse testified that he found the two propane style tanks in the storage shed. After conducting
a "Drager test" (3) on the two tanks, Hillhouse determined that the tank with the unusual looking valve
stem contained anhydrous ammonia. Hillhouse testified that anhydrous ammonia is used in the
manufacture of methamphetamine. Hillhouse observed two Coleman fuel containers that had also
been found in the storage shed, as well as two starter fluid cans that had holes punched in them. 
Hillhouse testified that the methamphetamine manufacturing process used ether, which was obtained
from starter fluid cans by holding them upside down and depressurizing them. 

 Hillhouse stated that he received permission from the owner of the mobile home next to the
burnt storage shed to search it. Hillhouse further stated that Appellant joined him when he went
inside. Hillhouse testified that in one of the bedrooms of the mobile home, he discovered a glass
container with a cloudy powdery type substance mixed in a liquid as well as bottles of Heet (4) on the
floor in plain view. Hillhouse further testified that he found boxes of empty pseudoephedrine pills
and receipts for the pseudoephedrine pills in a trash container. Hillhouse stated that he also found
a black zipper type bag containing drug paraphernalia comprising a spoon, clear plastic baggies, and
a baggy with a white powdery residue and a hypodermic needle in it. Hillhouse further stated that
he found acetone in the bathroom adjoining the bedroom. Hillhouse testified that all of the items
he collected were consistent with items found in the thirty-five to forty methamphetamine labs he
had previously investigated. Hillhouse also testified that he found $1,500.00 in cash on the bed in
the room with the aforementioned items. Hillhouse stated that he believed the money was
Appellant's proceeds from methamphetamine sales. Hillhouse further stated that while he was in
the bedroom sorting through the various items, Appellant entered the room and sat on the bed. 
Hillhouse testified that, at one point, Appellant hung his head, looked at the floor, and said to no one
in particular, "Damn, I'm going back to the pen."

 Marcus McLean, a forensic scientist with the Department of Public Safety Crime Lab in
Tyler, Texas, testified about the process of making methamphetamine. McLean explained that the
pseudoephedrine is soaked in a solvent such as methanol or acetone. The resulting evaporation
yields a pure form of pseudoephedrine. Anhydrous ammonia and lithium strips from batteries are
then combined with this pure pseudoephedrine. Next, either the ether obtained from the starter fluid
cans or the Coleman fuel is used to cook and create the chemical reaction that yields
methamphetamine. McLean testified that the mixing of these items can cause an explosion, which
could ignite a fire. McLean further testified that he tested the soaked pseudoephedrine pills found
during the investigation and determined that a controlled substance had not yet been created.

 Tonya Posey, an employee for Mabank Family Pharmacy, testified that Appellant purchased
two boxes of pseudoephedrine pills on January 23, 2006. During her testimony, Posey relied upon
records the State requires that pharmacies keep regarding the sale of pseudoephedrine pills. (5) Toni
Prestridge, the store manager for CVS in Mabank, Texas, testified that Appellant had purchased
pseudoephedrine pills from their pharmacy on September 28, October 22, November 3, and
December 31, 2005.

 Ultimately, the jury found Appellant "guilty" as charged on both counts. Following a bench
trial on punishment, the trial court sentenced Appellant to imprisonment for thirty-two years for
possession of anhydrous ammonia with intent to manufacture methamphetamine and twenty years
for arson with bodily injury. Appellant timely filed this appeal.


Evidentiary Sufficiency


 In his issues one through four, Appellant argues that the evidence is neither legally nor
factually sufficient to support the trial court's judgment.

Standard of Review

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d 1,
6 (Tex. App.-San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most
favorable to the verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at
186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing
court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

 The sufficiency of the evidence is measured against the offense as defined by a hypothetically
correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a
charge would include one that "accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the defendant is tried." Id. 

Factual Sufficiency

 When considering the factual sufficiency of the evidence, we must first assume that the
evidence is legally sufficient under the Jackson standard. See Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996). We then consider all of the evidence weighed by the trial court that tends
to prove the existence of the elemental fact (6) in dispute and compare it to the evidence that tends to
disprove that fact. See Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although
we are authorized to disagree with the trial court's determination, even if probative evidence exists
that supports the verdict, see Clewis, 922 S.W.2d at 133, our evaluation should not substantially
intrude upon the trial court's role as the sole judge of the weight and credibility of witness testimony. 
Santellan, 939 S.W.2d at 164. Where there is conflicting evidence, the trial court's verdict on such
matters is generally regarded as conclusive. See Van Zandt v. State, 932 S.W.2d 88, 96 (Tex.
App.-El Paso 1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine our confidence in the trial court's determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1,
11 (Tex. Crim. App. 2000); see also Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006)
(evidence is factually insufficient only when reviewing court objectively concludes that the great
weight and preponderance of the evidence contradicts the verdict). 

Possession of Anhydrous Ammonia

 In his first and third issues, Appellant argues that the evidence is insufficient to support the
charges that he possessed anhydrous ammonia with the intent to unlawfully manufacture
methamphetamine. "Contraband" is an item that it is unlawful for a person to possess. See Black's
Law Dictionary 317 (7th ed. 1999). Anhydrous ammonia is contraband when it is possessed with
the intent to manufacture methamphetamine. See Tex. Health & Safety Code Ann. § 481.124(b). 
In the case at hand, to support Appellant's conviction for possession of anhydrous ammonia with
the intent to manufacture methamphetamine, the State was required to prove that Appellant (1)
exercised control, management, or care over the substance and (2) knew the matter possessed was
contraband. See Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). A person acts
knowingly, or with knowledge, with respect to the nature of his conduct or in circumstances
surrounding his conduct when he is aware of the nature of his conduct or that the circumstances
exist. Tex. Penal Code Ann. § 6.03(b) (Vernon 2003). The State must establish to the requisite
level of confidence that the accused's connection with the contraband was more than just fortuitous. 
Poindexter, 153 S.W.3d at 406. When the accused is not in possession of the place where the
contraband is found, we cannot conclude that he had knowledge of and control of the contraband
unless there are additional independent facts and circumstances which link the accused to the
contraband. Id. (7) Links that Texas courts have recognized as sufficient, either singly or in
combination, to establish a person's possession of contraband include the following:


 (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain
view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant
was under the influence of narcotics when arrested; (5) whether the defendant possessed other
contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when
arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures;
(9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia
were present; (11) whether the defendant owned or had the right to possess the place where the drugs
were found; (12) whether the place where the drugs were found was enclosed; (13) whether the
defendant was found with a large amount of cash; and (14) whether the conduct of the defendant
indicated a consciousness of guilt.



Evans v. State, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). It is not the number of links that
is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. Id.
at 162.

 Here, Appellant was present when the firemen arrived to extinguish the blaze in the storage
shed. Appellant admitted to Harley that he had been in the shed when the fire began. Appellant
further stated to Harley that the keys to his truck were in the storage building, which had prevented
him from leaving. The anhydrous ammonia was in plain view in an illegal container. Other items
needed to manufacture methamphetamine besides anhydrous ammonia were also present. Such
items included the starter fluid cans with holes punched in them, the Coleman fuel cans, Heet,
acetone, and drug paraphernalia. Appellant made incriminating statements to Harley and Hillhouse
before he was arrested including statements that he was present in the storage building when the fire
began, that the keys to his truck were in the storage building when the fire began, thus preventing
him from leaving the scene of the fire, and that he was going back to the penitentiary. Appellant
further conveyed to Harley that he was renting a room in the mobile home next to the storage shed. 
Moreover, the odor from the anhydrous ammonia was overwhelming, $1,500.00 in cash was found
near the drug paraphernalia, and ingredients needed in the manufacture of methamphetamine were
present. Finally, the record reflects that Appellant acted erratically during the time the Payne
Springs Volunteer Fire Department was extinguishing the fire and during Hillhouse's investigation.

 Examining the aforementioned evidence in the light most favorable to the verdict, we
conclude that the jury could have determined beyond a reasonable doubt that Appellant exercised
control, management, or care over the anhydrous ammonia, that he had the intent to manufacture
methamphetamine, and that he knew the anhydrous ammonia was contraband. Therefore, we hold
that the evidence is legally sufficient to support the trial court's judgment.

 With regard to the factual sufficiency of the evidence, Appellant argues that Chiles testified
that he saw four individuals at the scene of the fire. Appellant contends that law enforcement should
have investigated to determine who these four individuals were. Yet, whether law enforcement had
a duty to investigate other potential suspects is not relevant to our review of the record for factual
sufficiency in the instant case. Moreover, the mere presence of these individuals in the place where
contraband is discovered, without more, is not conclusive evidence that such persons were parties
to the offense. See Martin v. State, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988). Nor does the
presence of others at the scene serve to dilute Appellant's culpability since possession of contraband
need not be exclusive. Id.  

 Appellant further argues that the links not existing between Appellant, the structure, and the
chemicals at issue weigh against the jury's finding of possession on his part. (8) However, we note that
it is not the number of links that is dispositive, but rather the logical force of all of the evidence, both
direct and circumstantial. See Evans, 202 S.W.3d at 162. Having reviewed the record in its
entirety, with consideration given to all the evidence, both for and against the trial court's finding,
we have not observed any evidence that causes us to conclude that the proof of guilt is so obviously
weak or otherwise so greatly outweighed by contrary proof as to render Appellant's convictions
clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to
support the trial court's judgment. 

 Appellant's first and third issues are overruled.

Arson with Bodily Injury

 In his second and fourth issues, Appellant contends that the evidence was neither legally nor
factually sufficient to support his conviction for arson with bodily injury. Appellant further contends
that the evidence indicates that Ward, the injured firefighter, was improperly trained to handle
hazardous chemicals and might not have inhaled the anhydrous ammonia had he been properly
trained. (9)

 Arson is an offense against property. Lozano v. State, 860 S.W.2d 152, 155 (Tex.
App.-Austin 1993, pet. ref'd). The Penal Code defines arson as occurring when a person recklessly
starts a fire or causes an explosion while manufacturing or attempting to manufacture a controlled
substance and the fire or explosion damages any building, habitation, or vehicle. See Tex. Penal
Code Ann. § 28.02(a-1). An arson offense is complete when the fire is started, not when bodily
injury or death occurs as a result. Lozano, 860 S.W.2d at 155; see also Romo v. State, 593 S.W.2d
690, 693 (Tex. Crim. App. 1980). The occurrence of such damage is not an element to be proven. 
Id. When bodily injury or death occurs as a result of arson, the statutory offense against property
remains unaffected, although the degree of the chargeable felony increases. Lozano, 860 S.W.2d
at 155 (citing Tex. Penal Code Ann. § 28.02(d) (Vernon Supp. 2008)). A person acts recklessly,
or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct
when he is aware of but consciously disregards a substantial and unjustifiable risk that the
circumstances exist or the result will occur. Tex. Penal Code Ann. 6.03(c) (Vernon 2003). The
risk must be of such a nature and degree that its disregard constitutes a gross deviation from the
standard of care that an ordinary person would exercise under all the circumstances as viewed from
the actor's standpoint. Id. Here, as set forth above, the evidence is sufficient to link Appellant to
the anhydrous ammonia in the storage shed where the explosion occurred. Moreover, we have held
that there is sufficient evidence that Appellant possessed such contraband with the intent to
manufacture methamphetamine. The record further reflects that Appellant admitted to Harley that
he had been in the shed when the fire began. Harley testified that, based on his training, the fire was
the result of manufacturing methamphetamine. Harley further testified that dealing with the
compounds found at the scene was a very dangerous activity because the compounds are flammable
and could cause death. Harley also testified that part of the building had been blown out at its base
and that pieces of it were found fifteen to eighteen feet from the structure. Furthermore, Ward,
Harley, and Bivins each described to the jury the strong bleach-like odor that overpowered them
upon entering the storage shed. Ward stated that he was overcome by the anhydrous ammonia gas
and had trouble breathing, which caused him physical pain. 

 Considering the aforementioned evidence in the light most favorable to the verdict, we
conclude that the jury could have determined beyond a reasonable doubt that Appellant recklessly
caused an explosion while manufacturing or attempting to manufacture methamphetamine, that the
fire or explosion damaged a building, and that by reason of Appellant's commission of arson, Ward
suffered bodily injury. Therefore, we hold that the evidence is legally sufficient to support the trial
court's judgment.

 With regard to the factual sufficiency of the evidence, Appellant again argues the links not
existing between Appellant, the structure, and the chemicals at issue weigh against the jury's finding
of possession on his part. (10) See Evans, 202 S.W.3d at 162. Based on our review of the record as a
whole, with consideration given to all the evidence, we have not uncovered any evidence that causes
us to conclude that the proof of guilt is so obviously weak or otherwise so greatly outweighed by
contrary proof as to render Appellant's convictions clearly wrong or manifestly unjust. Thus, we
hold that the evidence is factually sufficient to support the trial court's judgment. 

 Appellant's second and fourth issues are overruled.


Evidence of Pseudoephedrine Purchases


 In his fifth issue, Appellant contends that the trial court erred when it admitted evidence that
he had made four purchases of pseudoephedrine in the months leading up to the fire in question. The
trial court admitted evidence indicating that Appellant made purchases of pseudoephedrine on
September 28, October 22, November 3, and December 31, 2005. Appellant argues that such
evidence is inadmissible pursuant to Texas Rule of Evidence 404(b). Appellant further contends that
the evidence of these four purchases during the four month period prior to January 23, 2006 should
have been excluded because the probative value of such evidence was substantially outweighed by
the danger of unfair prejudice. See Tex. R. Evid. 403.

 When reviewing a trial court's ruling on the admission of evidence, an appellate court applies
an abuse of discretion standard of review. Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App.
2007). The trial court abuses its discretion when its decision lies outside the zone of reasonable
disagreement. Id. 

 Texas Rule of Evidence 404(b) prohibits the admission of evidence of other crimes or bad
acts committed by the accused to prove the character of the person and that he acted in conformity
with that character. Tex. R. Evid. 404(b). The gravamen of Rule 404(b) is that a defendant is to be
tried only for the crimes alleged in the indictment and not for being a criminal in general. Thacker
v. State, 889 S.W.2d 380, 392 (Tex. App.-Houston [14th Dist.] 1994, pet. denied) (citing Abdnor
v. State, 871 S.W.2d 726, 738 (Tex. Crim. App.1994)). To constitute an extraneous offense, the
evidence must show a crime or bad act, and that the defendant was connected to it. Lockhart v.
State, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992). Less prejudice to the defendant results from
the revelation of noncriminal acts than from disclosure of criminal conduct, although we analyze the
admission of both according to the same standard of review. Thacker, 889 S.W.2d at 392.

 Evidence of other crimes or bad acts is admissible for other purposes, such as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Tex. R. Evid. 404(b); Thacker, 889 S.W.2d at 392. It is within the discretion of the trial court to
determine whether admission of the evidence serves some purpose other than character conformity.
See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). Once a
defendant invokes Rule 404(b), if the trial court determines that the evidence is relevant only for
character conformity, it has no discretion to admit the evidence over a proper objection. Thacker,
889 S.W.2d at 393. On the other hand, if the trial court determines that the evidence is relevant, the
defendant must further object that the evidence is unfairly prejudicial. Id. The trial court must then
use the balancing test set forth in Texas Rule of Evidence 403 to determine whether the danger of
unfair prejudice substantially outweighs the probative value of the evidence. Id.; see Tex. R. Evid.
403. Because Rule 403 favors the admission of relevant evidence, the trial court should favor
admission in close cases, and it has wide latitude in ruling on the prejudicial nature of evidence.
Thacker, 889 S.W.2d at 393 (citing Montgomery, 810 S.W.2d at 389-90).

 Relevant evidence may be excluded if its probative value is substantially outweighed by the
danger of "unfair" prejudice, that is the tendency of the evidence to suggest a decision on an
improper basis. Tex. R. Evid. 403; Mozon v. State, 991 S.W.2d 841, 846-47 (Tex. Crim. App.
1999). Rule 403 requires exclusion of evidence only when there exists a clear disparity between the
degree of prejudice of the offered evidence and its probative value. Montgomery, 810 S.W.2d at
377. In sum, a trial court must balance (1) the inherent probative force of the proffered item of
evidence along with (2) the proponent's need for that evidence against (a) any tendency of the
evidence to suggest decision on an improper basis, (b) any tendency of the evidence to confuse or
distract the jury from the main issues, (c) any tendency of the evidence to be given undue weight by
a jury that has not been equipped to evaluate the probative force of the evidence, and (d) the
likelihood that presentation of the evidence will consume an inordinate amount of time or repeat
evidence already admitted. See Casey, 215 S.W.3d at 880.

 Here, the State argues that the evidence was admissible because it demonstrated Appellant's
motive and intent to stockpile pseudoephedrine in order to produce a large batch of
methamphetamine. Indeed, an intent to unlawfully manufacture methamphetamine is presumed if
the actor possesses, in one container or building, more than three containers packaged for retail sale
of a product containing ephedrine or pseudoephedrine in addition to other items specified by statute. 
See Tex. Health & Safety Code Ann. 481.124(b)(3)(A) (Vernon Supp. 2008). Thus, Appellant's
retail purchase of multiple packages containing pseudoephedrine was relevant in conjunction with
his possession of anhydrous ammonia to prove intent to unlawfully manufacture methamphetamine.

 We next analyze such evidence pursuant to Rule 403. As set forth above, Appellant's
purchases during the four months leading up to the fire at issue are probative evidence of Appellant's
intent to unlawfully manufacture methamphetamine. Such intent is a required element to prove the
offense charged in this case. See Tex. Health & Safety Code Ann. § 481.124(a). The State, thus,
needed this probative evidence to demonstrate a required element of the crime alleged. Our review
of the record does not indicate that the admission of such evidence, when combined with the other
evidence presented during the case, suggested a decision on an improper basis, confused the jury
from the main issues, or had any tendency to be given undue weight by the jury otherwise not
equipped to evaluate its probative force. Furthermore, the record does not indicate that this evidence
was repetitious or that it took an inordinate amount of time to present. As such, we conclude that
the probative value of such evidence was not substantially outweighed by the danger of unfair
prejudice. Therefore, we hold that the trial court did not abuse its discretion in admitting this
evidence. Appellant's fifth issue is overruled.


"Damn, I'm Going Back to the Pen"


 In his sixth issue, Appellant complains that the trial court record is incomplete because
Appellant's objection to evidence of his statement to Hillhouse, "Damn, I'm going back to the
Pen[,]" was not recorded and, therefore, was not part of the record on appeal. The State contends
that the record indicates that the trial court responded to Appellant's objection, stating, "I think I'll
reserve making a ruling and see how the evidence goes[,] and I'll make my ruling after I hear the rest
of the evidence." Thus, the State argues that Appellant has not preserved the issue for appellate
review because the record does not show that Appellant secured a ruling on his objection.

 Texas Rule of Appellate Procedure 33.1(a) requires, among other things, that the record show
the trial court "ruled on the request, objection or motion, either expressly or implicitly...." Tex. R.
App. P. 33.1(a)(2)(A); see Gutierrez v. State, 36 S.W.3d 509, 511 (Tex. Crim. App. 2001). We agree
with the State that the trial court never ruled on Appellant's objection concerning the admissibility
of his statement to Hillhouse. As such, error was not preserved. See Tex. R. App. P. 33.1(a)(2)(A). 
Appellant's sixth issue is overruled.

 In his seventh issue, Appellant contends that the trial court erred in admitting Appellant's
statement to Hillhouse because the probative value of the statement was substantially outweighed
by the danger of its unfairly prejudicial effect. However, we need not reach this issue. The record
before us indicates that Hillhouse testified concerning Appellant's statement after the trial court had
declined to rule on Appellant's objection as discussed above. Appellant made no objection to
Hillhouse's testimony regarding the statement of which he now complains. 

 An objection must be made each time inadmissible evidence is offered unless the
complaining party obtains a running objection or obtains a ruling on the complaint in a hearing
outside the presence of the jury. See Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). 
Here, the record does not indicate that Appellant made any running objection to Hillhouse's
testimony concerning his statement. Further, the record does not indicate that there was a ruling
germane to such testimony in a hearing outside the presence of the jury. Therefore, Appellant has
waived the issue. Appellant's seventh issue is overruled.


Disposition


 Having overruled Appellant's seven issues, we affirm the trial court's judgment.


 JAMES T. WORTHEN 

 Chief Justice

Opinion delivered September 10, 2008.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.



(DO NOT PUBLISH)
1. See Tex. Health & Safety Code Ann. § 481.124(a), (b) (Vernon Supp. 2008).
2. See Tex. Penal Code Ann. § 28.02(a-1), (e) (Vernon Supp. 2008).
3. Hillhouse testified that a "Drager test" is a method of using a pump device to detect the presence of
certain gases. 
4. Hillhouse explained that Heet is a gasoline additive that is used as a solvent in which to soak the
pseudoephedrine pills. Hillhouse described this soaking of the pseudoephedrine as the initial step of the
methamphetamine manufacturing process.
5. See Tex. Health & Safety Code Ann. § 481.077(a) (Vernon Supp. 2008).
6. As with a review for legal sufficiency, we measure the factual sufficiency of the evidence of the offense as
defined by a hypothetically correct jury charge. See Wooley v. State, No. PD-0861-07, 2008 WL 2512843, at *1
(Tex. Crim. App. June 25, 2008). 
7. The court of criminal appeals has recognized that the adjective "affirmative" adds nothing to "link" and
resolved to use only the word "link" to describe circumstances tending to connect the accused to the contraband. See
Evans v. State, 202 S.W.3d 158, 161-62 & n. 9 (Tex. Crim. App. 2006).
8. Specifically, Appellant argues that there was no evidence that (1) he had a key to the shed or house, (2)
he was under the influence of drugs, (3) he had illegal substances on his person at the time of the fire or his
subsequent arrest, (4) he made any furtive gestures, (5) he attempted to flee, or (6) he had care, custody, or control
of the premises.
9. Appellant concedes in his brief that contributory negligence is not a defense in a criminal case and
acknowledges that the instant case is "not going to change the law." Nonetheless, Appellant invites us to consider
the dissenting opinion in Rowell v. State, 165 Tex. Crim. 507, 308 S.W.2d 504, 510-17 (Tex. Crim. App. 1957)
(Davidson, J., dissenting). Having considered the case law Appellant has cited, we decline to hold that contributory
negligence is a defense in this case. 
10. See n.8.