LLOYD EDWIN ROWELL V. STATE

No. 29,188. November 27, 1957.

Appellant's Motion for Rehearing Overruled
(Without Written Opinion) January 22, 1958.

*L. D. Harris,* Houston, for appellant.

*Dan Walton,* District Attoney, *Thomas D. White,* Assistant District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

James O. Suggs was driving his 1951 Chevrolet in the 5600 block of Harrisburg, in Harris County, when his car was struck from the rear by a hit and run driver who was traveling in the same direction, driving a red and white 1956 Ford. As a result of this collision Suggs was rendered unconscious and sustained an injury to his neck. His injuries did not prove to be of a permanent nature and he was released from the hospital the following day.

Appellant stands convicted of the offense of aggravated assault with a motor vehicle and has appealed from the judgment rendered on February 26, 1957, upon a jury verdict assessing his punishment at thirty days in jail and a fine of $200.

The sufficiency of the evidence is challenged in two particulars, the first being that the state failed to prove that the driver of the Ford car was guilty of an act of negligence. Appellant did not testify.

A witness estimated the speed of the Ford car just prior to the collision "at 70 or more" and said that this was "a conservative estimate."

The evidence shows that Suggs was traveling at a speed of some 20 to 25 miles per hour, having pulled away from the curb some 30 feet to a half block or more prior to the collision, into the one line of traffic for vehicles traveling east, as were both

Suggs and the driver of the Ford. Suggs testified that he had driven "a little over a half a block, I imagine; close to a block."

There were black skid marks extending for a distance of 180 feet and ending at the point of impact at the scene of the collision; the Chevrolet came to rest some 200 feet from the point of impact, while the Ford was driven quickly from the scene.

Under the allegations of the complaint and information and the court's charge, a conviction was authorized upon a finding that appellant committed an assault upon the person of Suggs by wilfully or with negligence colliding with and causing injury less than death to his person.

There appears to be no question but that the driver of the Ford car was negligent in driving at an excessive speed and colliding with the Chevrolet from the rear. We find the evidence sufficient in this regard.

Next it is contended that there is not sufficient proof that appellant was the driver of the Ford automobile which collided with the Chevrolet.

James O. Suggs testified that some time after the collision he called on appellant and told him his name, whereupon appellant said "Are you the fellow I hit?" and offered to fix his car.

Lawrence Shea testified that he saw the collision and followed the red and white '56 Ford that ran into the rear of the '51 Chevrolet as it was driven at a rapid speed away from the scene of the collision; that he followed it for about a mile and a half to where it was parked in a carport; that he saw a man leave the car and enter a house; and that no one else got out of the car. He identified appellant as the man he later saw leave the house.

Shea and his companion called the officers and directed them to the scene of the collision.

Shea also testified that the front end of the Ford he followed was bashed in and the radiator badly damaged.

Officer C. L. Peterson testified without objection that he learned that appellant was the owner and operator of the car which he saw in the carport and which was pointed out to him as the car that struck the Chevrolet in the 5600 block of Harris-

burg; that he learned that appellant was the driver of the '56 Ford at the time of the collision; that he arrested appellant at his home where he was in bed, and he had the smell of alcoholic beverage on his breath. He testified that he saw no other man in appellant's home or "that could have gone in there."

Appellant, the evidence shows, had an epileptic seizure after his arrest, and was carried to a hospital and after treatment there, to jail where he made a statement. This statement was offered in evidence in which appellant said that at about 10:15 P.M. he had three beers at a bar and "I left there about 11:45 and drove out on Harrisburg;" that he was driving East on Harrisburg when he "blacked out" and the next thing he remembered was when the officers woke him up at his home and told him he was under arrest and that he had been involved in an accident.

We are not impressed with the suggestion that appellant's unfortunate physical condition in any way supports his statement that he "blacked out" while driving on Harrisburg.

The state's evidence showing that the Ford car was driven hurriedly from the scene of the collision to the home of appellant removes any doubt but that the driver was not "blacked out" by reason of an epileptic seizure at that time.

We find the foregoing evidence sufficient to sustain the jury's finding that appellant was the hit and run driver of the car which collided with and caused injury to Mr. Suggs.

The judgment is affirmed.

DAVIDSON, Judge, dissenting.

It is only by the rankest sort of speculation and inference that appellant is identified as the guilty party.

Suggs, the injured party, drove his Chevrolet automobile onto a two-lane highway about midnight and had been thereon "30 feet perhaps" when his automobile was struck from behind by a Ford automobile. Suggs was knocked unconscious by the impact.

When about "a quarter of a block away," Shea, a passenger in an automobile traveling in the opposite direction on the other side of the highway, saw the Ford "back up and turn around"

at a high rate of speed. The witness was unable to say whether the driver of the Ford at that time was a man or woman. He followed the Ford car, saw it being driven into a driveway or carport, "saw a man leave the car and head for the back of the house," and saw him enter the house. Shea then returned to the scene of the collision and advised the officers present what he had witnessed.

The officers went to secure a warrant to search the house Shea had seen the driver of the Ford enter. After obtaining the warrant, the officers went to the house and found appellant in bed. They placed him under arrest and started with him to the police station. On the way there the appellant suffered an epileptic seizure and was taken to the hospital. After treatment there, he was taken to the police station, where he made a written statement.

That statement contained nothing showing that appellant was guilty of the offense charged. Rather, it contained an exculpatory statement wherein appellant said:

("The last thing I remember is that I was driving East on Harrisburg when I blacked out. The next thing I remember was when the Officer's woke me up at my house in bed.)"

The foregoing is the testimony of the state identifying this appellant as the driver of the Ford automobile which struck the automobile driven by the injured party. Such is the testimony which my brethren hold sufficient to identify this appellant as the guilty party.

The fallacy of that holding is shown more by what was not proven than what was proven.

There is not a line of corroborated testimony that the Ford automobile actually belonged to appellant. The license number on that vehicle was not traced, and nowhere is it shown that it was registered in the name of the appellant. No one ever saw the appellant driving the Ford.

The absence of such proof strongly suggests that the automobile was not registered in the name of the appellant; the state made no effort to prove that it was. There is not a line of testimony showing that the house where appellant was found and arrested was not occupied by others who had an equal op-

portunity to own or drive the Ford automobile or to have access to or the use of the carport.

The witness Shea, who said that he saw the man leave the Ford automobile and enter the house, made no effort to say that the appellant was that man, nor did he so describe the man by size, or otherwise, by which description a comparison might be made with the appellant.

It is true that Shea testified he saw appellant leave the house, but at that time he, the appellant, was under arrest and in the custody of the officers, as shown by the fact that Shea said he heard appellant "mumbling to the officers" as he came out of the house.

A cardinal rule of law is that circumstantial evidence cannot rest upon inference, presumption, or what-might-have-been.

The state's case, here, rests upon the rankest sort of presumption, inference, and speculation—and this, notwithstanding the fact that the state could have at least identified the appellant with the ownership, or driving, of the Ford automobile if the true facts had so warranted.

The fact that the state made no effort to do so must be accepted as an admission that it could not do so.

The presumption must attain, then, that appellant was not the owner of the Ford.

Speaking of convicting one on inference, presumption, and speculation! Here, certainly, is a good example:

The arresting officer made an effort to supply proof of the ownership of the Ford in appellant by saying that he "learned" that the Ford belonged to appellant. Such statement, however, was wholly hearsay, an opinion, and without probative value.

The majority opinion states that the testimony of the witness Peterson, a policeman of the city of Houston, furnishes the necessary proof that appellant owned and was the driver of the Ford automobile.

I quote from the statement of facts the testimony of the witness upon that point:

("Q. Did you learn who the owner and operator of that car was?) A. Yes, sir.

("Q. Who did you learn it to be?) A. Mr. Rowell.

("Q. The defendant?) A. Yes, sir."

That testimony was given upon the direct examination of the witness by the state.

Upon redirect examination by the state, the following testimony was given:

("Q. Did you learn that this defendant was the driver of the '56 Ford at the time of the collision?) A. Yes, sir."

Upon its face, that testimony was hearsay of the rankest sort and, of course, should not have been admitted.

While it is true that counsel for the appellant did not object to the hearsay testimony, yet his failure to object cannot give to that testimony the probative value necessary to establish a fact or facts, because, being hearsay, it was evidence without the sanction of an oath and without opportunity of cross-examination. Hearsay evidence establishes no fact and constitutes no evidence. Winn v. Federal Land Bank of Houston, Texas Civ. App., 164 S.W. 2d 864; Christian v. Galutia, Texas Civ. App. 236 S.W. 2d 177.

The following is quoted from 18 Texas Jur., Evidence—Criminal Cases, Sec. 70, p. 139:

"The testimony of a witness that third persons stated that the property involved was theirs or belonged to the accused, or that the witness had no title thereto is inadmissible hearsay. Nor may the ownership of property at a certain place be proved by general reputation. And hearsay evidence is incompetent to prove that the defendant was in charge and control of the premises, or that certain persons had rented a portion thereof."

It is clear that Peterson's evidence, based and founded purely upon hearsay, did not and could not establish that appellant was the owner of the Ford or that he was the driver thereof or that he was in control of the house where he was arrested.

My brethren point out that the appellant, some time after the

collision, asked Suggs: "Are you the fellow I hit?" In appellant's confession, which the state introduced in evidence, he stated that the officers had told him that he had been involved in a collision. This statement was made in connection with the previous statement that he had "blacked out."

Under such circumstances, the interrogatory: "Are you the fellow I hit?" is not an admission of guilt because the statement that he "blacked out" is not contradicted but corroborated by the fact of the epileptic seizure which appellant suffered after arrest and on the way to the police station.

There is an utter lack of credible testimony identifying appellant as the driver of the Ford automobile. For that reason, the facts are wholly insufficient to authorize the conviction.

But for the sake of argument, alone, even though it be assumed—as I submit my brethren are here doing—that appellant was the driver of the Ford automobile, still, the evidence by no means authorizes his conviction. There is an utter lack of evidence that the collision was caused by or was the result of any act of negligence on the part of the driver of the Ford automobile; nor is there any evidence that there existed in the act of the driver of the Ford automobile an apparent danger of colliding with the Chevrolet automobile.

Here are the undisputed facts:

The state's witness Deskins, who was on the sidewalk and within twenty feet of the collision, testified:

"This old model Chevrolet—I don't recall the model—had pulled out on the highway. It had been on the highway 30 feet perhaps, and the Ford; a red and white '56 Ford going east on Harrisburg the same direction as the car: He must have applied his brakes, seemed like 100 feet before he actually hit the car in the rear."

This witness estimated the speed of the Ford automobile, at the time, to be at least seventy miles per hour.

There was evidence from other state witensses that the driver of the Ford automobile applied his brakes and that there were heavy skid marks for one hundred eighty feet and that the Chevrolet was approximately two hundred feet from the point of impact.

Now what is the picture presented by these facts?

The Chevrolet, shortly after midnight, was driven onto the highway at a slow rate of speed—about twenty miles per hour—and into the path and in front of another automobile approaching at a high rate of speed. After having traveled a distance of only thirty feet on the highway the Chevrolet was struck from the rear by the other automobile traveling in the same direction.

It is entirely reasonable to say that the driver of the Chevrolet deliberately pulled onto the highway in front of the Ford automobile, or that he failed to keep a proper lookout, for the headlights of the oncoming Ford car were bound to have indicated its approach. But the driver of the Chevrolet did not stop with driving onto the highway under such conditions: After coming onto the highway, it traveled at the low speed of twenty to twenty-five miles per hour.

All these facts point to but one conclusion: The acts and conduct of the driver of the Chevrolet were the cause of the collision but for which acts the collision would not have occurred. This is made evident by the distance the Ford skidded.

Of course the driver of the Ford automobile was operating the vehicle at a high rate of speed and was negligent in so doing, but the negligent act did not cause the driver of the Chevrolet to drive onto the highway in front of the oncoming Ford automobile and, after so doing, continue at such rate of speed as to constitute a hazard to the other traffic on the highway.

It must be remembered that the highway was a two-lane one and the car in which the witness Shea was riding was approaching in the other lane, thereby preventing the driver of the Ford from pulling into that lane to avoid the collision. He had no alternative but to apply his brakes in an effort to prevent the collision which was inevitably brought about by the act of the driver of the Chevrolet.

But it is insisted that contributory negligence on the part of the driver of the Chevrolet automobile would not constitute a defense, here.

I am well aware that such is the rule, but I am also aware of the holding in connection therewith under which the acts and conduct of the driver of the Chevrolet in this case may be looked to in order to determine whether the acts of the driver of the

Ford caused the collision or whether there existed an apparent danger of causing injury to the driver of the Chevrolet or whether the driver of the Ford was negligent. In support of that statement, see Fox v. State, 145 Texas Cr. Rep. 71, 165 S.W. 2d 733, wherein we said:

"While contributory negligence is no defense in such a case, the rights of the defendant are amply protected in the holding that the conduct of the deceased may be considered to determine whether the defendant's unlawful act was the cause of the death, or to determine whether or not the defendant was negligent."

It is my opinion that this record does not reflect that the negligent acts of the driver of the Ford automobile caused the collision; to the contrary, the collision was the result of the acts of the driver of the Chevrolet automobile

If this were a civil action whereby the driver of the Chevrolet was suing the driver of the Ford for damages, it would hardly be contended that the acts of the driver of the Chevrolet did not raise the defense of contributory negligence, or that contributory negligence on the part of the driver of the Chevrolet would not constitute a defense or authorize such to be urged as a defense to the suit for damages.

In a criminal case as here, the State of Texas occupies the position of the plaintiff in a civil suit and in prosecuting the defendant, here, for negligence causing the injury to the driver of the Chevrolet a different rule of law is applied, which says that in the criminal case contributory negligence is not a defense.

So then we have one rule of law applicable when money or property is involved and another rule when human liberty is at stake.

Contributory negligence may defeat a recovery by the plaintiff of damages from the defendant in a civil case, yet in a criminal case where the same facts are involved and the issue at stake is that of human liberty rather than damages it is held by the majority opinion that contributory negligence on the part of the injured party is no defense and avails the defendant nothing.

The only way to prevent such an unfair and unjust condition from arising is to enforce the rule, heretofore stated, that there

must exist a casual connection between the collision and the negligence of the accused and that there was an apparent danger of causing the collision and injury by that negligence.

If these rules are not to be applied in cases such as here presented, then it is time that we reexamine our holding that contributory negligence is not a defense, because such holding is wrong.

Looking at this case as an overall picture, it is obvious that that fundamental fairness necessary to the very concept of justice has not been preserved and maintained in securing this conviction.

The information charged only that the assault was committed wilfully and with negligence. The acts constituting the negligence upon which the state relied were not stated.

The case was submitted to the jury under a charge which did not as much as define the term "negligence," nor was there any instruction whatsoever as to what acts on the part of the appellant which, if believed, would constitute negligence.

So, under the charge, the jury were authorized to accept or seize upon any testimony which they desired and to say that such —in and as a matter of law—constituted negligence—and this, without any direction in the charge to the court thereby determining the law and the facts.

There is nothing in the jury's verdict showing or indicating what acts on the part of the appellant constituted negligence. Indeed, when judgment was entered on the verdict of the jury, the trial court made no effort to decree what acts of negligence caused the resulting assault.

Notwithstanding the absence of such finding by the jury or by the trial court, my brethren proceed to make that finding, themselves, for the jury, for they do not hesitate to hold that "the driver of the Ford car was negligent in driving at an excessive speed and colliding with the Chevrolet from the rear."

So a majority of the court (this court)—instead of the jury —make the finding of fact upon which this appellant was convicted, for there is not a suggestion in the record in this case that the jury trying the case so found.

There being no definition of negligence in the court's charge, then the finding of negligence rests upon two presumptions: first, that the jury knew what, in law, constituted negligence, and, second, that they found that the rate of speed at which the Ford was traveling constituted negligence, under their definition of that term.

In addition, the fact also remains that nowhere in the charge were the jury required to find that any negligence of the driver of the Ford caused the collision.

So then not only do the jury fail to find that appellant was guilty of negligence but they also fail to find that any negligence on his part caused the collision.

In its final analysis, then, this appellant goes to jail without a jury finding him guilty of having committed any acts which constitute a violation of the law.

If trial by jury means anything at all, surely it means that the jury must find the accused guilty of acts which, in law, constitute an offense. This record shows that this appellant has not been accorded that right.

I realize that the law places upon an accused and his counsel the duty to object to matters claimed to be error, but that requirement and duty to object cannot supersede and destroy due process and trial by jury, which follow every one accused of crime.

It is my opinion that due process of law precludes this conviction.

The exercise by the driver of the Chevrolet of the least diligence to secure and protect his own safety would have prevented this collision. I can arrive at no other conclusion under the facts of this case but that, despite the fact that the headlights of the Ford were shining and thereby evidencing the Ford's approach, the driver of the Chevrolet, in driving onto the highway into the path of the oncoming Ford, caused the collision—but for which acts the collision would not have occurred.

The appellant ought not to be required to pay the fine and serve the term in jail here assessed, under this record.

I respectfully dissent.