Opinion Issued April 22, 2010

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

No. 01-08-00768-CR

No. 01-08-00769-CR

———————————

William Albert Murphy, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 185th District Court

Harris County, Texas



Trial Court Case Nos. 1138167 and 1138168

 



 

 

 

MEMORANDUM OPINION

          Appellant,
William Albert Murphy, appeals a judgment convicting him for the third-degree
felony offenses of evading arrest in a motor vehicle and failure to stop and
render assistance.[1]  See
Tex. Penal Code § 38.04(a), (b)(2)(B)
(Vernon Supp. 2009); Tex. Transp. Code §§
550.021(c)(2) (Vernon Supp. 2009), 550.023 (Vernon 1999).  Appellant pleaded not guilty to both
offenses.  A jury found appellant guilty
for both offenses, made affirmative deadly weapon findings for both offenses,
found the enhancement paragraphs true for both offenses, and assessed his
punishment at 29 years in prison for each offense.  In eight issues, appellant contends (1) he
was improperly classified as a habitual offender for the failure to stop and
render assistance offense, (2) the evidence was legally insufficient to sustain
either the evading arrest or the failure to stop and render assistance
conviction, (3) the evidence was factually insufficient to sustain either the
evading arrest or the failure to stop and render assistance conviction, (4) the
State violated the constitutional protection against double jeopardy, (5) the
evidence was legally insufficient to support a deadly weapon finding for both
causes, (6) the evidence was factually insufficient to support a deadly weapon
finding for both causes, (7) the trial court erred by first discussing the
facts of the case during voir dire and then by denying a mistrial, and (8) the
identification procedure was unduly suggestive and all subsequent
identifications should have been excluded. 
We conclude that (1) appellant was properly classified as a habitual
offender, (2) the evidence was legally sufficient to sustain his conviction for
both causes, (3) the evidence was factually sufficient to sustain his
conviction for both causes, (4) the State did not violate the constitutional
protection against double jeopardy, (5) the evidence was legally sufficient to
support a deadly weapon finding only in the evading arrest offense, (6) the
evidence was factually sufficient to support a deadly weapon finding only in
the evading arrest offense, (7) appellant did not adequately brief the issue
regarding mistrial, and (8) appellant failed to preserve error regarding the
identification procedure.

          We modify
the judgment to remove the deadly weapon finding in the failure to render assistance
conviction, and, as modified, affirm both convictions.

Background

          One
night in October 2007, Joe Morales heard a car alarm in the parking lot of the
funeral home where he worked and lived.  When
he walked outside appellant approached him and began yelling.  Morales returned to the funeral home to call
the police, and during his emergency phone call, he heard appellant start one
of the funeral home’s work vans.  Morales
ran back outside in time to see appellant drive the van through the gates of
the funeral home.  When officers arrived
in response to the theft, Morales described appellant and his clothes, noting that
he had a light beard and short hair. 
Morales testified that he saw appellant from approximately eight feet
away in a well-lit parking lot for nearly 20 seconds.  

          Approximately
20 hours after the van was stolen, Officer Aaron King, who was in a marked
patrol car, saw the van.  He ran the
plates and discovered the van was reported stolen.  He then radioed for backup.  When Officer King activated his lights and
siren, appellant refused to pull the van over and instead fled at a “high rate
of speed.”  Appellant ran stop lights and
drove the wrong way down one-way streets in both commercial and residential
areas at speeds of up to 60 miles per hour. 
Other officers joined in the pursuit; however, appellant drove the van
so erratically that the officers scaled down the pursuit and tried to redirect
traffic.    

          Officer
Peters was involved in the police chase by helping redirect traffic at an
intersection near the chase.  Officer
Peters saw the van come through the intersection and crash directly into a
Pontiac carrying four passengers.  He
testified, “It was a horrific accident . . . just like a train hit it and the
van the [appellant] was driving came almost completely off the ground at the
force of the impact, T-boned [the Pontiac, and] pushed it all the way across
the intersection into a light pole.”  Officer
Peters testified that he then saw appellant “jump out of the . . . van, [and]
take off running.”  When appellant exited
the van, he turned around, made eye contact with Officer Peters, and then fled
the scene of the accident.  As Officer
Peters began to pursue appellant, he looked into the van to ensure no one else
was inside.  He testified that “there was
nobody in the van.”  

          Other
people also witnessed the collision. 
John Sanchez had just picked up his younger brother, Isaias Sanchez,
when they both saw the van collide with the Pontiac at the intersection.  They testified they saw both the van and the
Pontiac go “airborne” and land about 20 feet from the point of impact.  They both testified that as they rushed to
the Pontiac to help, they saw appellant jump out of the van and run from the
scene.

          Although
Officer Peters began the pursuit of appellant, it was Officer King who
apprehended him.  Officer King began
pursuing appellant after he exited the van and ran from it.  Officer King pursued appellant, apprehended
him, and returned him to the accident scene in a patrol car within 30 minutes
of the collision.  

          When
Officer King and appellant arrived at the accident scene, Officer King removed
appellant from the patrol car to see if witnesses could confirm whether this
was the same man they saw flee the van. 
The officers collectively shined light on appellant and allowed
witnesses to view him one at a time from across the street at a distance of
approximately 15 feet.  The officers did
not tell the witnesses that they needed to identify the man but they did ask
them if they had seen the man before.  John
and Isaias each identified appellant as the man they had just seen run from the
van.

          Because
the funeral home was only four miles from the scene of the accident, the police
asked Morales to come to the scene to see if appellant was the man who had taken
the van the night before.  When Morales
arrived, he told the officers he “recognized [appellant] because of his facial
features and his size and stature” and noted that appellant was wearing the
same clothes that he had worn when he confronted Morales the night before at
the funeral home.

At trial, Morales again identified
appellant as the man who took the van from the funeral home.  Morales noted that appellant had “longer
hair” and had “gained some weight” since the night he first identified him, but
he explained that appellant had a face Morales “couldn’t forget.”  Morales also told the jury that appellant was
alone when he took the van from the funeral home and that he would not have
identified appellant if “he had not been the man who took the van.”

Officer Peters identified appellant
in court as the man who “jump[ed] out of the . . . van [and took] off
running.”  He reiterated that no one else
was in the van when he checked it just moments after the collision.  He testified about the conditions of the
Pontiac’s passengers, and noted that he believed appellant used the van as a
deadly weapon.

Officer King also identified
appellant at trial.  He testified that a
motor vehicle can be a deadly weapon and that he believed appellant used the
van as a deadly weapon.  Officer King
further testified that appellant appeared different at trial than at the time
of his arrest.  He noted, however, that
appellant was the man in the photograph labeled as State Exhibit 26.  Officer King testified that the severity of
the damage to the Pontiac would make it obvious that its occupants needed
medical attention.

John and Isaias each testified they
saw the van collide with the Pontiac. 
Although they could not identify appellant in court, they both testified
that State Exhibit 26, the photograph of appellant near the time of his arrest,
was the same man they saw flee the van after the accident.  John and Isaias both noted that they clearly
saw appellant’s face when he exited the van, that the area where they saw
appellant exit the van was well-lit, and that appellant was the only person
that exited the van.  

Finally, the passengers of the
Pontiac testified.  Geoffrey Stephens
testified that he was the driver of the Pontiac when the collision
occurred.  He testified that the
collision left him in a coma for four weeks, that every bone in his face and
every rib on his left side was crushed, that his lungs were punctured, and that
his “brain [leaked] fluid.”  He testified
that since the accident, he has suffered significant memory loss, his spleen
has been removed, and 13 titanium plates and screws have been put in his head.  Derek Brown, the front passenger in the
Pontiac, testified that as a result of the collision, he suffered from “a
cracked skull . . . three [broken] ribs . . . [three] cracked vertebrae . . .
[and] neurological problems.” Brown testified that he lost sensation in the
left side of his face and some of his hearing. 


Legal and Factual Sufficiency

          In four issues, appellant
challenges the sufficiency of the evidence. 
In his second and third issues, appellant challenges the legal and
factual sufficiency of his two convictions for evading arrest and failure to
stop and render assistance.  In his fifth
and sixth issues, appellant challenges the legal and factual sufficiency of the
deadly weapon finding.

A.      Law Pertaining to Legal Sufficiency

          In a
legal sufficiency review, we consider the entire trial record to determine
whether, viewing the evidence in the light most favorable to the verdict, a
rational jury could have found the accused guilty of all essential elements of
the offense beyond a reasonable doubt.  See
Jackson v. Va., 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Williams
v. State, 235 S.W.3d 742, 750
(Tex. Crim. App. 2007).  We “may not
re-evaluate the weight and credibility of the record evidence and thereby
substitute our judgment for that of the [factfinder].”  Williams, 235 S.W.3d at 750.  We give deference to the responsibility of
the factfinder to fairly resolve conflicts in testimony, to weigh evidence, and
to draw reasonable inferences from the facts.  Id.            

B.      Law Pertaining to Factual Sufficiency

          We
begin our factual sufficiency review with the assumption that the evidence is
legally sufficient.  Laster v. State, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).   Evidence
that is legally sufficient, however, can be deemed factually insufficient if
(1) the evidence supporting the conviction is “too weak” to support the
factfinder’s verdict or (2) considering conflicting evidence, the factfinder’s
verdict is “against the great weight and preponderance of the evidence.”  Id.  We consider all of the evidence in a neutral
light, as opposed to in a light most favorable to the verdict.  Id.  

          In
reviewing the factual sufficiency of the evidence, we should afford almost
complete deference to a jury’s decision when that decision is based upon an
evaluation of credibility.  Lancon v.
State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).  The jury is in the best position to judge the
credibility of a witness because it is present to hear the testimony, as
opposed to an appellate court who relies on the cold record.  Id. 
The jury may choose to believe some testimony and disbelieve other
testimony.  Id. at 707.

 

 

          C.      Evading Arrest

Appellant contends that the
evidence at trial was legally and factually insufficient to support the evading
arrest conviction because the evidence failed to prove that appellant, rather
than another person, committed the crime.  
Specifically, appellant only challenges the sufficiency of the evidence
that he was the driver of the van that evaded the police.  Appellant contends no one identified him as the
driver and that no forensic evidence, inculpatory statements, or videotape
connects him to the van.  Appellant also
asserts that at least one of the identifying witnesses said he lost sight of
the driver, two of the witnesses could not identify him in court, and the owner
of the van was unduly influenced by appellant’s presence near the accident
scene.  

                    1.       Applicable
Law

Appellant was specifically charged
with evading arrest using a vehicle, a third-degree felony.  See Tex. Penal Code Ann. § 38.04(a), (b)(2)(A).  To convict him of the charged offense, the
State had to prove that appellant, while using a vehicle, intentionally fled
from a person he knew to be a peace officer attempting lawfully to arrest or
detain him.  See id. A person commits a crime under section 38.04 if he knows a
police officer is attempting to arrest him but nevertheless refuses to yield to
a show of authority.  See Brooks v. State, 76 S.W.3d 426, 434
(Tex. App.—Houston [14th Dist.] 2002, no pet.); see also Hobyl v. State, 152 S.W.3d 624, 627 (Tex. App.—Houston
[1st Dist.] 2004) (“[T]he accused must know that the person from whom he flees
is a peace officer attempting to arrest or detain him.”) (emphasis removed), pet. dism’d, improvidently granted, 193
S.W.3d 903 (Tex. Crim. App. 2006).  

“Identification of the defendant as
the person who committed the offense charged is part of the State’s burden of
proof beyond a reasonable doubt.”  Wiggins v. State, 255 S.W.3d 766, 771
(Tex. App.—Texarkana 2008, no pet.) (citing  Miller
v. State, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984)).  “When a defendant contests the identity
element of the offense, we are mindful that identity may be proven by direct
evidence, circumstantial evidence, or even inferences.”  Id.   “The test for sufficiency of an in-court
identification is whether we can conclude ‘from a totality of the circumstances
the jury was adequately apprised that the witnesses were referring to
appellant.’”  Id.  “The use of a photographic
representation of a person’s image has historically been sufficient to identify
the person.”  Id. (citing Flowers v. State,
220 S.W.3d 919, 925 (Tex. Crim. App. 2007)) (trial court could use picture to
compare to person standing before him); Littles
v. State, 726 S.W.2d 26, 32 (Tex. Crim. App. 1987) (“it has long been an
accepted practice to identify the accused by means of a photograph”).  “[T]he absence of an in-court identification
is merely a factor for the jury to consider in assessing the weight and
credibility of the witnesses’ testimony.” 
Id.  Moreover, the testimony of one eyewitness
may be sufficient to prove the State’s case. 
See Davis v. State, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.]
2005, no pet.) (“It is well established that a conviction may be based on the
testimony of a single eyewitness.”) (citing Aguilar
v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)); Harmon v. State, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th
Dist.] 2005, pet. ref’d) (holding witness’s testimony identifying defendant is
sufficient, standing alone, to support conviction).

                    2.       Analysis

          From
the evidence produced at trial, we hold a rational jury could find, beyond a
reasonable doubt, that appellant was the driver of the van.  Officer King testified that he concluded
appellant was driving the van based upon the statements of five witnesses and
upon the statements of Officer Peters.  Officer
King testified that after the accident, appellant told him a “white guy” was
driving the van.  However, Officer King
further testified that he did not find another person at the scene or in the
van who matched the description provided by appellant. 

Officer Peters testified that he
was involved in the police chase of the van, that he had his “lights and sirens
on,” and that after the van collided with the Pontiac he saw appellant jump “out
of the van, [and] take off running.”  He
further testified that he “got a good look” at appellant and that the man that
exited the vehicle “looked like the man sitting [in the court room, except] a
little skinnier.”  He then pointed at
appellant to confirm that appellant was the man he saw exit the vehicle.  Officer Peters further stated that as
appellant left the van, “[h]e turned around and looked at me, we made eye
contact and he saw that I was getting out of my vehicle and he ran from
me.”  The officer testified that when
appellant looked at him “there was adequate lighting at the intersection,” they
were approximately “40 feet” apart, and that he clearly saw appellant’s face
and clothing.  Finally, Officer Peters
noted that he “did not see anybody else get out of the van,” and that “as [he]
began his foot pursuit, as [he] approached and got alongside the van, [he] made
a point to look in the van, [and] ma[de] sure there was no other possible
subjects in the van.”  He confirmed that
“[t]here was nobody in the van.”  

John testified that after the
collision, he saw one person, appellant, get out of the van and run away from
it.  When appellant exited the van, he
was approximately eight feet from John.  After
appellant was apprehended, John identified him as the man he saw exit the
van.  John knew appellant was the same
man who exited the vehicle because he recognized appellant’s face and
build.  John testified that appellant was
also wearing the same clothing as the man who exited the vehicle.  John again identified appellant’s picture in
court and testified that, as appellant appeared in the picture, it was the same
man who exited the vehicle after the police chase and collision.         

Isaias offered similar testimony
and noted that he saw only one person exit the van and that appellant was the
person who exited the van and subsequently fled the scene of the collision.  He testified that he saw appellant exit the
van and was able to later identify appellant because his clothing and facial
hair were the same as the man who exited the vehicle after the collision.  

Even if we excluded the subsequent
identification by Morales, the owner of the van, whose identification appellant
says was prejudiced by appellant’s presence near the accident scene, three
witnesses identified appellant as the person who exited the van after the
collision.   See Davis, 177 S.W.3d at 359 (stating “conviction may be based on
the testimony of a single eyewitness”).  Furthermore,
these witnesses testified that no one else was in the vehicle with him.  Viewing the evidence in a light favorable to
the jury’s verdict, the evidence shows that a jury could reasonably find beyond
a reasonable doubt that appellant was the driver of the van.  We hold the evidence is legally sufficient to
prove appellant’s guilt of evading arrest. 
See Rogers v. State, 832 S.W.2d 442, 444 (Tex. App.—Austin 1992, no
pet.) (holding circumstantial evidence presented at trial sufficient to support
evading arrest conviction).

Giving due deference to the jury’s
weighing of the evidence, a neutral examination of the evidence shows that the
evidence is not so weak that the jury’s finding appellant guilty of evading
arrest is clearly wrong or manifestly unjust, and that the determination of
guilt is not against the great weight and preponderance of the evidence.  We hold the evidence is factually sufficient
to prove appellant’s guilt for evading arrest. 
See id. 

          D.      Failure to Stop and Render Assistance

Appellant contends the evidence is
legally insufficient to show he failed to stop and render assistance by
asserting the same identification challenge raised in the evading arrest, as
well as assertions specific to this offense.

1.       Applicable Law

A person commits the offense of
failure to stop and render assistance if (1) a driver of a vehicle, (2)
involved in an accident, (3) resulting in injury or death of any person, (4)
intentionally and knowingly, (5) fails to stop and render reasonable assistance.  Goar v.
State, 68 S.W.3d 269, 272 (Tex. App.—Houston [14th Dist.] 2002, pet ref’d.);
see also Tex. Trans. Code Ann. §§ 550.021, 550.023.  Circumstantial evidence is sufficient
evidence to prosecute for failure to stop and render assistance.  Clausen
v. State, 682 S.W.2d 328, 332 (Tex. App.—Houston [1st Dist.] 1984, pet ref’d).  

2.       Analysis

Appellant first asserts the
evidence is insufficient to support the failure to stop and render assistance
conviction because no witness specifically testified that he was the driver of
the van.  He contends that if he was not
the driver of the van, then he was not required to render assistance after the van
collided with the Pontiac.  As noted
earlier, three witnesses testified that after they observed the van collide
with the Pontiac, appellant was the only person to exit the vehicle.  Officer Peters testified that he checked the
van seconds after the collision and did not find any other person in the van.  We conclude a reasonable jury could find
beyond a reasonable doubt that appellant was the driver of the vehicle based
upon the testimony presented.  

Appellant next asserts he was not
required to render assistance because the driver of the Pontiac was intoxicated
from illegal drug use.  However, the
negligence of the other driver or victim is not a defense to the action or
non-action of a defendant that fails to stop and render assistance after an
accident.  Rowell v. State, 308 S.W.2d 504, 509, 165 Tex. Crim. 507, 516 (Tex.
Crim. App. 1957) (Davidson, J., dissenting) (noting that contributory
negligence on part of injured party is no defense and avails defendant nothing).

Appellant also asserts that because
police and medical personnel were present and were able to render assistance,
he did not need to do so himself. 
Specifically he asserts that because the officers “had supposedly
secured the scene almost instantly, [ ] their own actions negated the
requirement of anyone [to] ‘mak[e] arrangements’ for medical attention[.]”  Contrary to appellant’s assertion, a
defendant is not excused from complying with the requirements of section
520.021 simply because medical personnel or police are already at the scene.  Sheldon
v. State, 100 S.W.3d 497, 504 (Tex. App.—Austin 2003, pet. ref’d)
(determining that other motorist’s assistance did not relieve defendant of
statutory duty to stop and render reasonable assistance to victim).

Finally, appellant asserts that
there is no evidence that he failed to get help.  Specifically, he asserts that there is no
proof that when he ran from the scene of the accident that he was not running
to get help.  The jury could have
reasonably rejected this argument because if he had been running to get help,
the evidence would show that he ran towards those able to help the injured, the
police, rather than run from them.

Because appellant was the only
person that exited and ran from the van after the collision, the evidence
demonstrates appellant was the driver of the van.  It is undisputed that the van crashed
directly into the Pontiac and that the collision resulted in multiple
life-threatening injuries.  Multiple
witnesses testified that after the collision, appellant knew of the collision,
the victims, and the police, and instead of rendering assistance or running to
those who could help him render assistance, he intentionally and knowingly
chose to run away from the scene of the accident.  

Viewing the evidence in a light
favorable to the jury’s verdict, the evidence shows that the jury could
reasonably find beyond a reasonable doubt that (1) appellant was the driver of
the van, (2) he was involved in the collision between the van and the Pontiac,
(3) the collision resulted in injury, and (4) he intentionally and knowingly,
(5) failed to stop and render reasonable assistance.  We hold the evidence is legally sufficient to
prove appellant’s guilt of failing to stop and render assistance.  See
Goar, 68 S.W.3d at 272–73.

Giving due deference to the jury’s
weighing of the evidence, a neutral examination of the evidence shows the
evidence is not so weak that the jury’s finding appellant guilty for failing to
stop and render assistance is clearly wrong or manifestly unjust, and that the
determination of guilt is not against the great weight and preponderance of the
evidence.  We hold the evidence is
factually sufficient to prove appellant’s guilt of failing to stop and render
assistance.  See id.

We overrule appellant’s third and
fourth issues.

E.      Deadly Weapon
Finding

          Appellant
challenges the legal and factual sufficiency of the evidence indicating that he
used the van as a deadly weapon during the commission of these offenses.  Both of the jury charges in the case included
a special issue in the guilt phase of trial that asked the jury to determine
whether appellant “used or exhibited a deadly weapon, namely, a motor vehicle,
during the commission of the offense for which he has been convicted or during
the immediate flight therefrom[.]”  The
jury answered affirmatively in both cases.

1.       Applicable Law

          A
deadly weapon is “anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury.”  Tex.
Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2009); Sullivan v. State, 248 S.W.3d 746, 751
(Tex. App.—Houston [1st Dist.] 2008, no pet.). 
Objects that are not usually considered dangerous weapons may become so,
depending on the manner in which they are used during the commission of an
offense.  Id. (citing Drichas v. State,
175 S.W.3d 795, 798 (Tex. Crim. App. 2005).  A motor vehicle may become a deadly weapon if
the manner of its use is capable of causing death or serious bodily
injury.  Id.  Specific intent to use a
motor vehicle as a deadly weapon is not required.  Id.  The deadly weapon statute does not require
other motorists to be “in a zone of danger, take evasive action, or require the
defendant to intentionally strike another vehicle in order to justify a deadly
weapon finding” with respect to the defendant’s vehicle.  Id. at
799.  

          To
determine whether a motor vehicle was used as a deadly weapon, “first, we
evaluate the manner in which the defendant used the motor vehicle during the
felony; and second, we consider whether, during the felony, the motor vehicle
was capable of causing death or serious bodily injury.”  Sierra
v. State, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009).  In considering the manner in which appellant
used the vehicle, we must also examine whether appellant’s driving was reckless
or dangerous.  See id.

2.       Deadly Weapon Finding for Failure to Stop and Render Assistance


          

Appellant challenges the legal and
factual sufficiency of the evidence to support the jury’s affirmative finding
of use of a deadly weapon in the commission of the offense of failure to stop
and render assistance.  Specifically,
appellant asserts the evidence does not show he used his vehicle to facilitate
his failure to stop and render assistance offense because it was disabled upon
impact and in addition, he was not able to use or exhibit it in a manner to
place others in danger of serious bodily injury or death by the vehicle.  We agree that the evidence is legally
insufficient to show appellant’s vehicle was used or exhibited as a deadly
weapon during the failure to stop and render assistance offense.

Evidence at trial must demonstrate
that the deadly weapon was used or exhibited “during the transaction from
which” the felony conviction is obtained. 
Cates v. State, 102 S.W.3d
735, 738 (Tex. Crim. App. 2003).  The
relevant time period for determining whether appellant’s vehicle was used as a
deadly weapon during the offense of failure to stop and render assistance is
the time period after the collision with the Pontiac.  See id.  Witnesses at the scene observed appellant
driving the vehicle in a reckless and dangerous manner; however, appellant’s
reckless and dangerous control of the van occurred prior to the collision.  After the collision, appellant ran from the
van and fled the police on foot. 
Appellant did not use the vehicle to flee the scene.  There is no evidence that any person was
endangered by appellant’s vehicle once it was rendered inoperative and
abandoned by appellant.

Standing alone, evidence of how a
vehicle was driven before the offense of failure to stop and render assistance
is not sufficient to sustain a deadly weapon finding.  See id.  Because there is no evidence that appellant’s
vehicle was driven in a manner that endangered lives during the offense of
failure to stop and render assistance, we conclude the deadly weapon finding is
not supported by legally sufficient evidence. 
See id. (holding evidence legally
insufficient to support deadly weapon finding in failing to stop and render assistance
offense where there was no evidence that vehicle was used or exhibited as deadly
weapon).   Because we hold the evidence
is legally insufficient to support a deadly weapon finding for the failure to
stop and render assistance offense, we do not need to discuss appellant’s
argument regarding the factual sufficiency of the finding.

We sustain the part of appellant’s
fifth and sixth issues concerning the failure to stop and render and assistance
conviction and reform the judgment to omit the deadly weapon finding in that
case.

 

 

3.       Deadly Weapon Finding for Evading Arrest 

          We
first consider whether appellant’s driving was both dangerous or reckless.  See
Sierra, 280 S.W.3d at 255.  The
evidence shows that appellant stole a vehicle, and that when the police
discovered the vehicle, he fled from the police in the van at a “high rate of
speed.”  During the police chase, he ran
stop signs and lights, drove the wrong way down one-way streets, and traveled
at speeds of up to 60 miles per hour on downtown and residential streets where
other traffic was present.  Officers were
forced to scale back the police pursuit because the pursuit “was becoming a
public safety hazard.”  The police
pursuit only ended when, after running a red light, appellant “T-boned” a
Pontiac at an intersection, causing a “horrific” accident.  Appellant struck the Pontiac with such force
that both vehicles “went airborne” and landed 20 to 25 feet from the point of
impact.  The evidence is clear that
appellant’s driving was both reckless and dangerous.  See id.
at 255–56.

We next consider whether the van
was capable of causing serious bodily injury during appellant’s commission of
the offenses of evading arrest.  See id. 
The evidence shows the van caused serious bodily injury.  The Pontiac’s passengers were severely injured
after appellant drove the van into the Pontiac, causing both vehicles to go
“airborne.”  Three of the four were
rendered unconscious from the collision. 
The driver, Stephens, was “completely bloody, gurgling, [and]
convulsing.”  He suffered significant
memory loss and was left in a coma for four weeks.  “Every bone in [his] face was crushed.  All [of his] ribs on [his] left side were
crushed.”  After the impact, his brain
was leaking fluid and his lungs were punctured. 
Brown, the front passenger in the Pontiac, suffered “a cracked skull . .
. three [broken] ribs . . . [three] cracked vertebrae . . . [and] neurological
problems.”  He also suffered hearing loss
and lost sensation in the left side of his face.  The record is clear that appellant’s use of
the van caused serious bodily injury to the Pontiac’s passengers.  See id.
at 256.

          Viewing
the evidence in a light favorable to the jury’s verdict, the evidence shows
that the jury could reasonably find beyond a reasonable doubt that appellant’s
use of the van was reckless and dangerous and that the manner in which
appellant used the van made the van capable of causing death or serious bodily
injury.  See id. at 255–56.  We hold the
evidence legally sufficient to support the jury’s finding that appellant,
during the commission of the offense of evading arrest, used a deadly weapon, a
vehicle, that, in the manner that it was used, was capable of causing death or
serious bodily injury.  See Drichas, 175 S.W.3d at 798 (holding
evidence was legally sufficient to support deadly weapon finding when there was
evidence appellant drove on wrong side of road and that he endangered police
and other motorists); see also Tyra v.
State, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995) (noting that anything
actually used to cause death or serious bodily injury is capable of causing
death or serious bodily injury).

          Giving
due deference to the jury’s weighing of the evidence, a neutral examination of
the evidence shows the evidence is not so weak that the jury’s deadly weapon finding
in the evading arrest conviction is clearly wrong or manifestly unjust, and
that the finding is not against the great weight and preponderance of the
evidence.  We hold the evidence factually
sufficient to support the jury’s finding that appellant, during the commission
of the offense of evading arrest, used a deadly weapon, a vehicle, that, in the
manner it was used, was capable of causing death or serious bodily injury.  See,
e.g., Fleming v. State, 987
S.W.2d 912, 919 (Tex. App.—Beaumont 1999), pet.
dism’d improvidently granted, 21 S.W.3d 275 (Tex. Crim. App. 2000), (evidence
that defendant intentionally, knowingly, or recklessly drove his vehicle into motor
vehicle occupied by another driver was sufficient to find that defendant’s
vehicle was deadly weapon).

          We
overrule that portion of appellant’s fifth and sixth issues concerning the
charge of evading arrest.

Classification of Offense

          In
his first issue, appellant contends that the failure to stop and render
assistance offense was “improperly enhanced” as a “habitual” felony.   At trial, appellant objected and maintained
that the offense was a “special” felony with a “special” punishment range.  The trial court overruled his objection.  On appeal, appellant asserts that the offense
of failure to stop and render assistance is a “hybrid” offense that is not
eligible for enhancement to a habitual offense.

          The
offense of failing to stop and render assistance is defined by sections 550.021
and 550.023 of the Texas Transportation Code. 
See Tex. Transp. Code §§ 550.021,
550.023.  Although section 550.021(c)(2)
provides that the offense, not involving serious bodily injury or death, is
punishable by imprisonment in the institutional division of the Texas
Department of Criminal Justice for not more than five years or confinement in
the county jail for not more than one year, the Texas Transportation Code does
not specifically assign a felony classification to the offense in accordance
with the classification system referred to in section 12.04 of the Texas Penal Code.  See Tex. Penal Code Ann. § 12.04 (Vernon
2003) (classifying felony offenses as capital felonies, felonies of first
degree, felonies of second degree, felonies of third degree, and state jail
felonies); see also Ramirez v. State,
90 S.W.3d 884, 885 (Tex. App.—San Antonio 2002, pet. ref’d).  

Nevertheless, the statutory
construction of the Texas Penal Code makes the offense a third degree
felony.  Section 1.03 of the Texas Penal
Code makes provisions of Titles 1, 2, and 3 of the Penal Code applicable to
offenses defined by other Texas laws, unless the statute defining the offense
provides otherwise.  See Tex. Penal Code. Ann.
§ 1.03(b) (Vernon 2003); Ramirez, 90
S.W.3d at 885.  Section 12.41 is
contained in Title 3 of the Penal Code. 
Section 12.41 is entitled “Classification of Offenses Outside this Code”
and provides, in pertinent part, “For purposes of this subchapter, any
conviction not obtained from a prosecution under this code shall be classified
as follows: (1) ‘felony of the third degree’ if imprisonment in the Texas
Department of Criminal Justice or another penitentiary is affixed to the
offense as a possible punishment . . . .” 
Tex. Penal Code Ann. §
12.41 (Vernon Supp. 2009) (emphasis added). 
As the Transportation Code does exclude the application of 1.03(b), section
12.41 applies to sections 550.021 and 550.023 of the Texas Transportation Code
per section 1.03.  See id. §§ 1.03, 12.41; Tex.
Transp. Code §§ 550.021, 550.023; Ramirez, 90 S.W.3d
at 885.  Because imprisonment in the Texas Department
of Criminal Justice or other penitentiary is affixed to the offense as a
possible punishment, the offense of failing to stop and render assistance is a
third degree felony offense under section 12.41.  See
Tex. Penal Code Ann. § 12.41; Childress v. State, 784 S.W.2d 361, 365
(Tex. Crim. App. 1990) (holding offense of failure to stop and render assistance
should be classified pursuant to section 12.41 because it is offense defined
outside Code that was to be enhanced); Ramirez,
90 S.W.3d at 886 (holding that the language of section 12.04, altered by the
1993 amendment adding “state jail felony” did not call validity of Childress holding into question).

In this case, the State enhanced
appellant’s failure to stop and render assistance with two prior felony
convictions: a robbery in which appellant
was finally convicted on January 13, 1999, and a possession of a firearm in
which he was finally convicted on June 13, 2005.  See Tex. Penal Code Ann. § 12.42(d) (if it
is shown during trial of felony offense that defendant has “previously been
finally convicted of two felony offenses, and the second previous felony conviction
is for an offense that occurred subsequent to the first previous conviction
having become final, on conviction he shall be punished by imprisonment in the
Texas Department of Criminal Justice for life, or for any term of not more than
99 years or less than 25 years.”)  Because failing to stop and render assistance
is a third degree felony offense, and appellant had two prior felony
convictions, we hold the trial court properly enhanced appellant’s offense as a
habitual felony.  See Tex. Penal Code § 12.42(d);
Childress, 784 S.W.2d at 365–66
(stating that failure to stop and render assistance offense was properly
enhanced with two prior felony convictions to sentence range of 25 to 99 years
or life in prison).

We overrule appellant’s first
issue.

Double Enhancement

          In
appellant’s fourth issue, appellant contends that the State’s use of the same
conduct to prove an essential element of the offenses and to support deadly
weapon findings violates the constitutional protection against double
jeopardy.  Specifically, he asserts he
was subject to multiple punishments for the same conduct and that his
constitutional right under the United States Constitution against double
jeopardy was therefore violated.  Because
we have determined the evidence legally insufficient to support the deadly
weapon finding for the failure to stop and render assistance offense, we only
review this issue for the evading arrest offense.

The Double Jeopardy Clause of the
Fifth Amendment, applicable to the states through the Fourteenth Amendment,
protects an accused against a second prosecution for the same offense for which
he has been previously acquitted or previously convicted.  Littrell
v. State, 271 S.W.3d 273, 275 (Tex. Crim. App. 2008) (citing Brown v. Ohio, 432 U.S. 161, 164–65, 97
S. Ct. 2221, 2225 (1977)).  It further
protects an accused from being punished more than once for the same offense.  Id.

          Appellant
acknowledges he is raising this issue for the first time on appeal and he does
not otherwise assert that he raised this double-jeopardy claim at trial.  Appellant, however, contends that he can raise
his double-jeopardy complaint for the first time on appeal because (1) the
undisputed facts show that a double-jeopardy violation is clearly apparent on
the face of the record; and (2) enforcement of the usual rules of procedural
default serve no legitimate state interest. 
See Gonzalez v. State, 8
S.W.3d 640, 643 (Tex. Crim. App. 2000).  We
agree that this legal standard applies to determine if appellant preserved
error.

          Under
Gonzalez, the critical inquiry is
whether the record before the appellate court clearly reflects a
double-jeopardy violation.  See id. at 643–45.  We conclude the record does not clearly
reflect a double-jeopardy violation, and that appellant has not satisfied the
first prong of the Gonzalez test.  

          Appellant
was convicted of evading arrest, which requires proof that appellant, while
using a vehicle, intentionally fled from a person he knew to be a peace officer
attempting lawfully to arrest or detain him. 
See Tex. Penal Code Ann. § 38.04(a), (b)(2)(A).  It was unnecessary for the jury to make a
deadly weapon finding to convict him of evading arrest.  See id.  A deadly-weapon finding may be made if a
defendant used or exhibited a deadly weapon. Tex.
Code Crim. Proc. art. 42.12 § 3g(a)(2) (Vernon Supp. 2009); Ex Parte Huskins, 176 S.W.3d 818, 820
(Tex. Crim. App. 2005).  When the trial
court makes a deadly weapon finding in its judgment under article 42.12,
section 3g(a)(2) of the Texas Code of Criminal Procedure, this finding is not a
separate conviction or punishment.  See Tex.
Code Crim. Proc. Art. 42.12, § 3g(a)(2); Pachecano v. State, 881 S.W.2d 537, 546 (Tex. App.—Fort Worth 1994,
no pet.) (holding that jeopardy does not bar including deadly weapon finding
when deadly weapon allegation is also element of offense because deadly weapon
finding does not increase defendant’s sentence).  While a deadly-weapon finding does affect a
defendant’s eligibility for probation and parole, it does not alter the range
of punishment to which the defendant is subject, or the number of years
assessed.  See Tex. Gov’t Code
§§ 508.145, 508.149 (Vernon Supp. 2009); Huskins, 176 S.W.3d at 821.  A deadly-weapon finding may affect how the sentence is served, but it is not part
of the sentence.   Huskins,
176 S.W.3d at 820–21.  Because the deadly
weapon finding does not affect the assessment of punishment, the trial court’s
deadly weapon findings did not punish appellant a second time.  See
Pachecano, 881 S.W.2d at 546.

          Furthermore,
even if deadly weapon findings constituted additional punishments for the
evading arrest offense, this would not violate double jeopardy if the
legislature intended both punishments to apply. 
See Mo. v. Hunter, 459 U.S.
359, 366, 103 S. Ct. 673, 678 (1983); see
also Martinez v. State, 883 S.W.2d 771, 774 (Tex. App.—Fort Worth 1994,
pet. ref’d).  In Hunter, a state court tried a defendant in one trial for both
first-degree robbery, which included the element of the use of a dangerous or
deadly weapon, and the offense of armed criminal action, of which the defendant
was guilty because of his use of such a weapon. 
Hunter, 459 U.S. at 361–62,
103 S. Ct. at 675–76.  The defendant was
convicted of both state-law offenses, and the trial court assessed a separate
punishment for each offense.  Hunter, 459 U.S. at 366, 103 S. Ct. at
678.  The United States Supreme Court
held that this did not violate the Double Jeopardy Clause because it was what
the legislature intended.  Hunter, 459 U.S. at 362, 103 S. Ct. at
676.  

Likewise, the Texas Legislature has
provided that, in a felony conviction, including a felony conviction in which
the use of a deadly weapon is an essential element of the offense, the
defendant’s status regarding community supervision, parole, and mandatory
supervision is affected if the defendant has used or exhibited a deadly weapon
during the commission of the offense.  See Patterson v. State, 769 S.W.2d 938,
940 (Tex. Crim. App. 1989) (under Texas law, all felonies are theoretically
susceptible to affirmative deadly weapon finding); Martinez, 883 S.W.2d at 774 (“We see nothing that would lead us to
any other conclusion but that the legislature intended for the deadly weapon
provision to apply in every felony case . . . .”); see also Huskins, 176 S.W.3d at 820–21 (noting that deadly weapon
finding is not part of sentence); State
v. Ross, 953 S.W.2d 748, 751 (Tex. Crim. App. 1997) (same).

For these reasons, after reviewing
the record before us, we find the evidence does not show that a double-jeopardy
violation is clearly apparent on the face of the record.  See
Gonzalez, 8 S.W.3d at 643.  Because
appellant has not satisfied the first prong of Gonzalez, and appellant did not otherwise raise this issue at
trial, we overrule appellant’s fourth issue.

Mistrial

          In
appellant’s seventh issue, appellant contends the court erred when it denied a
mistrial.  Appellant asserts that “the
entire venire was irretrievably damaged” from the trial court’s use of
hypotheticals during its voir dire that “exactly matched” the facts of
appellant’s cases and his criminal history. 
He contends the trial court’s hypotheticals constituted an improper
comment on the weight of the evidence.  

          To
support his argument, appellant states that the judge made hypotheticals, the
hypotheticals exactly matched both the facts and the circumstances of the
offense and his criminal history, and that he objected, asked for a mistrial,
and a new panel.  He then cites to “Vol.
II, Reporter’s Record, pages 132-161.”  

Appellant’s brief does not contain
a clear and concise argument for the contention made with appropriate citations
to the record.  Appellant fails to show
when the trial court made these hypotheticals. 
He fails to show how the facts and circumstances of the hypotheticals
“exactly” matched “both the facts of the offense and the circumstances of [his]
criminal history.”  He also fails to show
where he objected.  Finally, he has not explained
how “the entire venire was irretrievably damaged.”

Because appellant fails to show
anything in the record to support or explain his contentions, and provides no
argument to explain how the trial court’s hypotheticals “irretrievably” damaged
the “entire venire,” we hold appellant has waived error on this issue.  See Tex. R. App. P. 38.1(i); Harrelson v. State, 153 S.W.3d 75, 89
(Tex. App.—Beaumont 2004, pet. ref’d) (holding that although appellant’s brief
referred to eleven separate pages in reporters record, because it did not
identify any statements or explain how statements were against appellant’s
interest, appellant waived error); Maldonado
v. State, No. 12-03-0429-CR, 2005 WL 2862223, at *5 n.3 (Tex. App.—Tyler
Oct. 31, 2005, no pet.) (mem. op., not designated for publication) (holding
that although appellant cited to pages and volumes of reporter’s record,
“references to ‘pp. 88-163,’ ‘pp. 4-121,” and “pp. 19-26,” fail to adequately
apprise court of portion of record that supports [a]ppellant’s argument”).

We overrule appellant’s seventh
issue.

Identification Procedure

          In appellant’s eighth issue,
appellant contends the trial court committed harmful error by admitting  Morales’s identification of him because the procedure
was unduly suggestive.  The only pretrial
identification appellant discusses in his brief is the identification by
Morales.  Appellant asserts the pretrial
identification procedure was unnecessarily suggestive because when Morales
identified appellant, he was alone, was in handcuffs, and had police lights
shining on him near the scene of the accident. 
Appellant also asserts that “other witnesses” were unable to identify
appellant and that Morales’s pretrial identification was the only
identification at the scene of the accident.

          When
evidence is erroneously admitted, we conduct a harm analysis under section
44.2(b) of the Texas Rules of Appellate Procedure.  See Tex. R. App. P. 44.2(b); Tex. R. Evid. 103(a); Sunbury v. State, 33 S.W.3d 436, 442
(Tex. App.—Houston [1st Dist.] 2000), aff’d,
88 S.W.3d 229 (Tex. Crim. App. 2002).  We
disregard the error unless the error affects substantial rights of the
appellant.   Tex. R. App. P. 44.2(b); Sunbury,
33 S.W.3d at 442.

          Assuming
the court erred by allowing into evidence Morales’s pretrial identification, the
error is harmless because (A) there was other, extensive evidence identifying
appellant as the only driver of the van; and (B) Morales’s testimony about how
the van was taken was not overly prejudicial.

A.      Other
Identification Evidence

The record shows that besides
Morales, three other witnesses identified appellant as the man who exited the
van after the collision.  Officer Peters
identified appellate at the scene of the accident and in court as the man who
exited the van after the collision and then fled the scene of the
accident.  John and Isaias identified
appellant at the scene of the accident as the man they saw exit the van and
identified appellant by a photograph in court. 
In light of the identification evidence admitted through three other
witnesses who identified appellant as the man who exited the van after the
collision, we hold that there was sufficient identification evidence.  See
Davis, 177 S.W.3d at 359 (stating
“[i]t is well established that a conviction may be based on the testimony of a
single eyewitness”); Harmon, 167
S.W.3d at 614 (holding one witness’s testimony identifying defendant is
sufficient, standing alone, to support conviction).

B.      Morales’s Testimony
Was Not Overly Prejudicial 

          Appellant
suggests Morales’s testimony harmed him because it mentioned extraneous
evidence about how the van was stolen. 
Appellant’s argument is,

Mr. Morales not only pointed
to and identified [appellant] in court AFTER the suppression was denied, he
also let slip information about asset [sic] of extraneous offenses [the theft
of the van, unlawful trespass, and criminal mischief of destroying the gate]
which tainted the jury’s perception of [appellant].  Nothing could have been more dramatic than
the story he told of barely escaping from a man who broke into his business and
crashed out his gate. . . . Since other witnesses by the State failed to
identify the [a]ppellant at all, this false identification materially contributed
to the verdict and to the punishment.

 

          In
considering the harmful impact of the admission of Morales’s identification
testimony, we do not agree it was overly prejudicial so that it affected
appellant’s substantial rights.  See Tex.
R. Evid. 403.  First, we note that
appellant did not object to Morales’s testimony about how the van was stolen. The
record shows that Morales discussed the theft of the van before appellant
presented his motion to suppress the pretrial identification by Morales.  During Morales’ testimony regarding the theft
of the van, appellant did not object to any part of Morales’s testimony.  To the extent appellant is complaining about
the admission of the evidence about how the van was stolen, appellant’s failure
to object to the admission of the evidence on the ground waives error
concerning the admission of the evidence. 
See Tex. R. App. P. 33.1(a); Buchanan
v. State, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006).  The evidence about how the van was stolen,
therefore, was properly before the trial court.

          We also disagree with
appellant that the identification of appellant became overly prejudicial when
viewed in combination with the story about how the van was stolen.  Appellant states that “[n]othing could have
been more dramatic than the story [Morales] told of barely escaping from a man
who broke into his business and crashed out his gate.”  Contrary to appellant’s contention, the story
about how the van was stolen has minor dramatic significance when compared to
the dramatic evidence introduced at trial about the collision.  The evidence about the collision includes pictures
of the damaged Pontiac after the collision, a picture of a victim immediately
after the accident that shows the victim completely bloodied and on life
support equipment, and evidence about the extensive injuries suffered by the
occupants of the Pontiac.  

We hold Morales’s identification testimony
did not substantially contribute to either the finding of guilt or to the
punishment.  We overrule appellant’s
eighth issue.




 

Conclusion

          We modify
the judgment in the failure to render assistance conviction to remove the
deadly weapon finding, and, as modified, affirm both convictions.

 

                                                                   

 

                                                                   Elsa
Alcala

                                                                   Justice

 

Panel consists of Chief Justice Radack, and Justices
Alcala and Higley.

Do not publish. 
Tex. R. App. P. 47.2(b).

 

 

 

 











[1]
              The
evading arrest offense was trial court number 1138168 and is appellate number
01-08-0769-CR.  The failure to stop and
render assistance offense was trial court number 1138167 and is appellate
number 01-08-0768-CR.